OPINION OF THE COURT
Edward J. Greenfield, J.
This court has been called upon to resolve a deadlock of the Fire Department Pension System’s Board of Trustees with respect to the interpretation and application of the much discussed Heart Bill (General Municipal Law, § 207-k). The board of trustees is composed of 24 votes, divided equally between union designees, and city officials or their representatives. No act may be taken by the board of trustees except by a seven-twelfths vote.
The city trustees, acting in reliance on the opinions of the current Corporation Counsel rendered February 28, 1979 and March 9, 1979, have refused to grant line of duty disability pensions to members of the New York City Fire Department despite certification by the Pension System’s Medical Board. Without their concurrence, there was no legal action taken on the disability applications, hence the applicants should be retired on a lesser pension (Matter of City of New York v Schoeck, 294 NY 559), and then relegated to instituting a CPLR article 78 proceeding, in order to establish in a court proceeding that the denial of a line of duty disability pension was unlawful, arbitrary or capricious.
The union trustees, fearing that the effective denial of the applications would be treated by the courts as an administrative determination which would be entitled to great judicial deference and not lightly to be disturbed, declined to participate and vote on the controverted line of duty disability pensions. The union trustees, after several abortive meetings, commenced the action of Uniformed Firefighters Assn. v Beekman for a declaratory judgment as to the proper interpretation of the Heart Bill, and to direct the city trustees to comply therewith. Thereupon, the city trustees brought the action of Matter of City of New York v Mancuso, seeking an order of mandamus to compel the union trustees to appear and vote on the unresolved pension applications. A similar procedure was followed for uniformed police officers. (Cf. Matter of City of New York v De Milia, NYLJ, June 18, 1979, p *831 13, col 6.) Both sides have moved for summary judgment in the declaratory judgment action. Both actions have been consolidated for decision by this court.
The court finds no merit to the defendants’ contention that declaratory relief is not available and that, accordingly, the action should be dismissed. A conflict clearly exists between the city and union trustees concerning the interpretation and application of the relevant statutory provisions, which involves the fiduciary responsibilities of the trustees. As noted by Mr. Justice Asch in Matter of City of New York v Vizzini (NYLJ, Aug. 11, 1975, p 9, cols 3, 5, affd 54 AD2d 535): "Where, as here, trustees can in good faith show that there are opposing viewpoints as to the proper exercise of their trust a justiciable controversy exists.”
The issue in Vizzini was the right of disabled firemen to use earned terminal and accrued leave prior to retirement. As in the case at bar, the Corporation Counsel had issued an opinion that they could not. The holding in Vizzini is consistent with a long line of decisions holding that declaratory relief is available where the meaning or construction of a statute is at issue (see, e.g., Dun & Bradstreet v City of New York, 276 NY 198; Namro Holding Corp. v City of New York, 17 AD2d 431, affd 14 NY2d 693).
The history of the treatment of a firefighter’s line of duty disability for pension purposes is essential to an understanding of the controversy. As far back as 1882 special pension benefits were recognized for disabilities incurred in the line of duty. (L 1882, ch 410, § 519.) A pension of three-quarters pay was awarded for line of duty disability. (Administrative Code of City of New York, § B19-4.0, subd 1-a.) There was no requirement that the line of duty disability be traceable to a particular accident. In 1940, when the present pension system was adopted, the provision for three-quarters pay for line of duty disability was continued. (Administrative Code, § B197.89.) The medical board was to certify to the trustees the entitlement of an applicant to line of duty disability benefits. (Administrative Code, § B19-7.84.) Reference was also made in those sections to accidental injury and accidental disability.
Whenever disability was directly attributable to a single incident in the course of firefighting — burns, asphyxiation or injuries caused by falls or being struck by falling objects, the entitlement to a line of duty disability pension was clear. More difficult to determine factually were the cumulative *832 effects of long-term stress, exposure, smoke inhalation, lung damage, and the like. When the causal connection was shown, however, line of duty disability pensions were granted even though the disability was not related to a single specific incident.
Because of the problems of proof in establishing line of duty disability for lung disease incurred over an extended period of duty, the Legislature in 1969 provided for a rebuttal presumption that a firefighter’s lung disease was service connected (L 1969, ch 1106). That presumption became part of the pension system. (Administrative Code, § B19-7.84.1.) Then, in 1970 came the passage of the Heart Bill (General Municipal Law, § 207-k, L 1970, ch 805). That bill had been pushed for many years by police and fire organizations, having been approved 13 times by the Legislature, and having been vetoed by the Governor on each prior occasion. Clearly, this was not a hasty or ill considered piece of legislation. The evident purpose of the law was to relieve the pension applicant of the onerous burden of proving the connection between the applicant’s heart condition and his service by providing for a rebuttable presumption that an applicant’s heart disease was incurred as a result of his service. Section 207-k of the General Municipal Law, enacted originally for a period of one year, reads as follows: "Notwithstanding the provisions of any general, special or local law or administrative code to the contrary, but except for the purposes of sections two hundred seven-a and two hundred seven-c of this chapter, the workmen’s compensation law and the labor law, any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death to a paid member of the uniformed force of a paid police department or fire department, where such paid policemen or firemen are drawn from competitive civil service lists, who successfully passed a physical examination on entry into the service of such respective department, which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence.”
The Heart Bill, despite considerable opposition, was re-enacted by the Legislature annually until 1979, and then extended two years, to June 30, 1981. (L 1979, ch 321.) In 1973 the city trustees took the position, as they do today, that the presumption of section 207-k of the General Municipal Law *833 was not effective to prove a specific line of duty "accident” as specified in sections B19-7.84 and B19-7.89 of the Administrative Code. Those sections provide:
B19-7.84 "Medical examination of a member in city-service for accident disability and investigation of all statements and certifications by him or on his behalf in connection therewith shall be made upon the application of the commissioner, or upon the application of a member or of a person acting in his behalf, stating that such member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of wilful negligence on the part of such member and that such member should, therefore, be retired. If such medical examination and investigation shows that such member is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member and that such member should be retired, the medical board shall so certify to the board, stating the time, place and conditions of such city-service performed by such member resulting in such disability, and such board shall retire such member for accident disability forthwith.”
B19-7.89 "Upon retirement for accident disability, a member shall receive:
"1. a retirement allowance which shall be equal to three-quarters of his final compensation; and
"2. his accumulated contributions, without interest, either in a lump sum or in the form of an annuity which is the actuarial equivalent of such accumulated contributions, as the member shall elect.”
Edward Koch, who took office as the Mayor of the City of New York in 1978, has had no hesitancy in expressing his dislike of the Heart Bill, and has characterized it as a "ripoff”. He called for its repeal, and after its re-enactment in 1979, he criticized the legislators who had passed it. His appointee, Corporation Counsel Allen Schwartz, rendered an opinion that despite the presumption of section 207-k of the General Municipal Law that heart disease sustained during the period of service of a uniformed policeman or fireman was *834 incurred in the performance and discharge of duty, the disability pension applicant would still have to prove "that his disability is the result of some discrete and identifiable, unusual and sudden event which alone would constitute an 'accident’ within the meaning of § 7.84 and § 7.89.” (Corporation Counsel Opn No. 25-79.) He advised the board of trustees that they could not apply and interpret the disability sections as they had in the past. The present deadlock, and resultant litigation ensued.
It is not the purpose of this court to become embroiled in the argument as to whether or not the Heart Bill is a "rip-pif” as alleged by the Mayor, costing the city additional hundreds of thousands, or a practical and equitable way of dealing with a serious medical problem that is not susceptible to normal standards of proof. That is for resolution in public and legislative forums. This court must deal with the law as it presently exists on the books, and is obliged to construe it in a meaningful and objective fashion.
Is there a rational basis for asserting, as the city trustees do, that a presumption can be created by section 207-k that a heart condition has been incurred in the performance and discharge of duty, while the pension applicant must still produce probative proof, unaided by presumption, specifying the "time, place and conditions” of the service which produced the disability, under sections B19-7.84 and B19-7.89 of the Administrative Code?
The statute is not to be read in a vacuum. There is, more than in most cases, a wealth of legislative history, administrative practice and construction over the years. The very purpose of the Heart Bill, as demonstrated in the 20-year period from 1948 to 1968, when the bill was repeatedly passed by the Legislature and vetoed by the Governor, was to overcome the necessity of firemen and policemen having to connect their heart condition to a specific incident except in particularly dramatic and traumatic occurrences. Stresses and strains upon the cardiac system do not arise overnight, but are a cumulative result of recurrent crises. Both the advocates and opponents of the Heart Bill made reference to its presumption as covering all aspects of proof. Indeed, it would have made little sense to create such a presumption of line of duty causation and still require a demonstration of proximate cause linked to a specific accident.
The question as to whether the presumption applied to both *835 line of duty causation and accident causation was evidently first raised in 1973 when an amendment to section 363-a of the Retirement and Social Security Law, which applied to out-of-city policemen and firemen covered by the State retirement system, was passed (L 1973, ch 1046, § 30). That section requires that the disability be "the natural and proximate result of an accident”. Hence there was a basis for contending that proof had to be presented as to both line of duty causation and reference to a particular accident. Section 363-a of the Retirement and Social Security Law specifically creates a rebuttable presumption as to both. Since section 207-k of the General Municipal Law made no reference as to a presumption of "accident”, Corporation Counsel Redlich was asked for an opinion and he concluded that section 207-k, as it dealt with city police and firemen, created a presumption of both accidental and line of duty causation. It appears that there were many, many disability retirement allowances awarded in cases of heart disease through 1978 without specific proof that the disability was incurred as a result of a specific accident. The reported cases appear to have accepted the presumption both as to accident and to line of duty without specific comment. The only question focused on was whether or not the statutory presumption had been overcome by the proof presented. (See Matter of Sullivan v Board of Trustees of N. Y. Fire Dept. Art. 1-B Pension Fund, 42 AD2d 541; Edwards v Codd, 59 AD2d 148; Matter of Ferrigno v Board of Trustees of Police Pension Fund of Police Dept. of City of N. Y, 63 AD2d 872; Matter of Sweeney v McGuire, NYLJ, Nov. 15, 1979, p 7, col 4.) Mr. Justice Stecher of this court in Matter of Lemmerman v McGuire (102 Misc 2d 56, 58), concluded that under the Heart Bill, "the presumption of job relatedness carries with it the presumption of accidental causation.”
In the light of re-enactment of the Heart Bill annually on nine successive occasions, without change while being construed to cover both line of duty and accidental causation, it must be assumed that the Legislature in making no further changes agreed that its intent was being carried out both administratively and judicially. Such construction of a statute over a period of time is entitled to great weight and is not lightly to be changed. (See Moses v Koch, 97 Misc 2d 243, affd 67 AD2d 862.) The Legislature, in re-enacting the law without material change, is deemed to have been aware of and to have adopted the construction it has been accorded by an adminis *836 trative agency. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 129, at p 276; Helvering v Reynolds, 313 US 428, 432; Matter of Hotel Assn. of N. Y. City v Weaver, 3 NY2d 206, 214; Matter of Foscarinis [Corsi], 284 App Div 476, 477.)
The 1979 opinion of the Corporation Counsel, expressly differing with the 1973 opinion, was repudiated by the Chairman of the Senate Cities Committee who stated on the floor of the Senate:
"I am aware that in the opinion of the present New York City Corporation Counsel, dated February 28, 1979 and March 9, 1979, he has interpreted the language of Section 207-k— contrary to the general and earlier interpretation of the same language by New York University Law School Dean Norman Redlich in 1973 when Dean Redlich was Corporation Counsel and contrary to the uniform interpretation of that section by New York City Police and Fire Pension Boards of Trustees, and the courts reviewing the determinations of these — by these pension boards, since 1970 — so as to render Section 207-k can [sic] virtually meaningless and ineffectual. But Section 207-k, as any law enacting this bill, is the product of the State legislature, signed by the Governor, which is not governed by the vagaries of Corporation Counsel construction of any one city.
"From the beginning, Section 207-k was intended and understood by its sponsors and the Legislature to create the presumption that a heart disability of a firefighter or a police officer was sustained in line of duty, so that the Section 207-k presumption extended to every aspect of proof of a line of duty disability, including proof of the line of duty accidental nature of the disability. And it was also always intended and understood that the Section 207-k presumption was of substantial weight and not lightly to be rebutted or set aside, so that the Section presumption would prevail where there was not substantial competent evidence to show that the heart disability was not sustained by a line of duty accident.”
The conclusion of Mr. Justice Hughes of this court in Matter of City of New York v De Milia (NYU, June 18, 1979, p 13, col 6, supra), decided contemporaneously with the legislative debates on the 1979 re-enactment, indicate general agreement with the 1979 opinion of the Corporation Counsel. I disagree with that interpretation, which is essentially dicta, since the question before him was not to declare and construe the law, but to determine whether police union trustees *837 should be required to attend and participate in pension fund meetings. I am in accord with the conclusion of Mr. Justice Ascione in Matter of De Milia v McGuire (NYLJ, Nov. 20, 1976, p 6, cols 1, 3), dealing with a CPLR article 78 proceeding brought by police line organizations. The court concluded, as do I, that the presumption of section 207-k applies to both accident and line of duty causation unless that presumption be overcome by competent evidence.
Any construction which concludes that while there is a presumption of line of duty causation, the applicant still has the burden of establishing that the etiology of his heart condition is a specifically identifiable incident of trauma is a case of appearing to give one hand while taking away with the other. There is nothing in the wording of the sections which compels so bizarre a conclusion. A reasonable construction, rather than one leading to absurdity and futility, is called for to permit the statute to work its intended results. (United States v American Trucking Assns., 310 US 534, 543; Matter of Pell v Coveney, 37 NY2d 494, 496.) There should be no abrogation by interpretation.
Section 207-k of the General Municipal Law makes no mention of accident or trauma. Instead, it refers to a "condition of impairment of health” — "condition” being a cumulative situation which is the end result of an aggregate of multiple insults to body and psyche. A "condition” which is presumptively "incurred in the performance and discharge of duty” and leads to "disease” is the result of gradual buildup, as distinguished from an "injury” or "accident” associated with a particular and discrete event. The requirement that incapacity be the "natural and proximate result of an accidental injury” appears only in section B19-7.84 of the Administrative Code. Section 207-k of the General Municipal Law provides that it controls "Notwithstanding the provisions of any general, special or local law or administrative code to the contrary”.
The reference in section B19-7.84 of the Administrative Code to "an accidental injury” is set forth in contradistinction to "wilful negligence”. The injury must be unexpected, and not purposeful. This is clearly distinguishable from the prevailing requirement under the State retirement system, where incapacity must be the "natural and proximate result of an accident” (Retirement and Social Security Law, § 63, subd a, par 2; § 363, subd a, par 2; emphasis supplied). Clearly, no *838 applicant is to have his pension benefits enhanced by his own deliberate misdeeds. It is wrongful conduct, not a long-term condition, which is being ruled out. In this context, "accident” must be measured by results, not causes. (Messersmith v American Fid. Co., 232 NY 161, 165; Johnson Corp. v Indemnity Ins. Co. of North Amer., 6 AD2d 97, 100-101.) While "accident” might otherwise be understood as a sudden and unusual event, as distinguished from the long-term, protracted changes which bring about a "condition”, from the point of view of the disabled policeman or fireman, the unintended results, the unforeseen consequences are "accidental” to him, and certainly not the outgrowth of "wilful negligence”. The concepts of "disease” and "accident” are not always mutually exclusive. The unexpected consequences of acts normally done may be "accidental”, although not referable to an identifiable event and point in time. (Rosenthal v Mutual Life Ins. Co. of N. Y., 7 AD2d 182, 185; McGroarty v Great Amer. Ins. Co., 43 AD2d 368, affd 36 NY2d 358.) Thus, "an accident may be the result of 'continuous strenous physical efforts’ which contribute to the ultimate, and subsequent, heart injury (Matter of Miner v. Chrysler Corp., 22 A D 2d 523)”. (Matter of Jamroz v Refíned Syrups & Sugars, 33 AD2d 859, 860.)
Based on the foregoing, plaintiffs are entitled to a judgment declaring that where an applicant has been found to be disabled as a result of heart disease, section 207-k affords a fireman otherwise entitled thereto a rebuttable presumption that the disability is accidental and was incurred in the performance of his duties (provided he had previously passed a physical examination on entry, which examination did not reveal any evidence of such condition). The board is directed to grant and allow accident disability pension benefits to those entitled to the presumption of section 207-k unless there is competent evidence that the disability was not incurred in the performance of his duties. The request for preliminary injunctive relief is moot. Accordingly, plaintiffs’ motion for summary judgment is granted to the extent of issuing a declaratory judgment in accordance herewith, and ordering the board, and each member thereof, to apply and interpret section 207-k as it had been applied prior to 1979.
The city trustees’ motion to dismiss the complaint or alternatively for summary judgment in their favor is denied.
This decision with respect to the declaratory judgment renders unnecessary the mandamus relief sought in Matter of *839 City of New York v Mancuso. Such a mandamus would have directed the trustees to meet and vote on all disability pension applications, even if a deadlock resulted. (Cf. Matter of City of New York v Schoeck, 294 NY 559, supra.) Mandamus is not to be utilized when there are other available remedies. (Matter of Lyon Co. v Morris, 261 NY 497; Matter of Coombs v Edwards, 280 NY 361, 364; Matter of Corbeau Constr. Corp. v Board of Educ., 32 AD2d 958.) Unlike the situation in Matter of City of New York v De Milia (NYLJ, June 18, 1979, p 13, col 6, supra), where mandamus was ordered, here declaratory judgment was asked for and given. The court’s decision should afford to all trustees the guidelines and parameters as to how their votes are to be exercised.