52 N.Y.2d 463 (1981)
Uniformed Firefighters Association, Local 94, IAFF, AFL-CIO, et al., Respondents,
v.
Augustus A. Beekman, as Fire Commissioner of the City of New York and Chairman of the Board of Trustees, et al., Appellants. In the Matter of the City of New York et al., Appellants,
v.
Nicholas Mancuso et al., Respondents.
In the Matter of Samuel De Milia, as President of the Patrolmen's Benevolent Association of the City of New York, et al., Respondents,
v.
Robert J. McGuire, as Police Commissioner of the City of New York, et al., Appellants.
Court of Appeals of the State of New York.
Argued February 18, 1981.
Decided April 2, 1981.
Allen G. Schwartz, Corporation Counsel (Leonard Koerner and Paul T. Rephen of counsel), for appellants in the first above-entitled matter.
Murray A. Gordon, Edward M. Edenbaum and Kenneth E. Gordon for respondents in the first above-entitled matter.
Allen G. Schwartz, Corporation Counsel (Leonard Koerner, Jeffrey D. Friedlander and Paul T. Rephen of counsel), for appellants in the second above-entitled matter.
W. Bernard Richland and David S. Weiss for respondents in the second above-entitled matter.
Chief Judge COOKE and Judges GABRIELLI, FUCHSBERG and MEYER concur with Judge WACHTLER; Judge JASEN dissents and votes to modify in a separate opinion in which Judge JONES concurs.
*467 WACHTLER, J.
The question in these cases is whether section 207-k of the General Municipal Law, often called the "heart bill", establishes a presumption that a disabling or fatal heart condition suffered by a New York City policeman or fireman was accidentally sustained as a result of his employment which, if not rebutted by contrary proof, entitles the employee or his family to accidental, line-of-duty pension or death benefits.
The courts below held that the statute establishes such a presumption. The city and its representatives appeal. They concede that the statute establishes a presumption that the heart condition was job related. They urge, however, that it does not create any presumption that the heart condition was accidental. Thus in their view, to qualify for the benefits, the employee or his family must affirmatively prove that the heart condition which caused the disability or death was the result of a particular accident occurring at a specific time and place.
The City of New York has long provided special pension benefits to police officers and firemen who become disabled as a result of their service to the city. Prior to 1940 these line-of-duty retirement benefits were payable upon a finding that the disability was job related; there was no requirement *468 that it be the result of an accident (L 1920, ch 427, § 1; Administrative Code of the City of New York, §§ B18-4.0, B19-4.0). In that year, however, when the present retirement system was adopted, the Administrative Code sections providing line of duty disability and death benefits for policemen and firemen required and still require proof that the employee's disability or death was accidental (Administrative Code, §§ B18-39.0, B18-43.0, B19-7.8, B19-7.84). Thus, for instance, line-of-duty death benefits are not payable unless there is evidence that the employee's death "was the natural and proximate result of an accident sustained while a member and while in the performance of duty at some definite time and place and that such death was not the result of wilful negligence on his part" (Administrative Code, §§ B18-39.0, B19-7.8).
In most cases, where a police officer or fireman suffers a sudden traumatic injury during a particular incident, the code's requirement of proof establishing a job-related accident poses no real impediment to recovery of a line-of-duty pension or death benefits. For many years, however, the police and firemen's associations have urged the Legislature that this requirement creates an unrealistic, if not impossible, burden of proof in cases where death or disability results from a heart condition. It is their position that statistical and medical studies show that heart conditions are an occupational hazard for firemen and police officers serving in large metropolitan areas. They claim that such conditions are the result of a gradual process attributable to the continuous stress and sudden bursts of physical and mental strain routinely required in the line of duty and that it is unrealistic to look for particular incidents as the cause (see, e.g., Memorandum, NY Legis Ann, 1970, pp 85-86). Throughout the years various public officials and agencies have opposed, and continue to oppose, any relaxation of the burden of proof in these cases, noting that heart conditions are generally not considered job-related accidents and that there is insufficient support for the contention that this is a special risk for those employed as firemen or police officers.
From 1948 to 1968 a dozen heart bills similar to section *469 207-k of the General Municipal Law were passed by the Legislature but on each occasion were vetoed by the Governor (see State Division of the Budget Report, May 4, 1970, reprinted in the Appendix to Uniform Firefighter's Assn. v Beekman, at p 191). Finally in 1970, the Legislature passed and the Governor signed section 207-k of the General Municipal Law, which in relevant part provides: "Notwithstanding the provisions of any * * * administrative code to the contrary * * * any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death to a paid member of the uniformed force of a paid police department or fire department * * * who successfully passed a physical examination on entry into the service * * * which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence."
The statute which was originally effective for a year was reenacted annually until 1979 when it was extended for a two-year period expiring on June 30, 1981 (L 1979, ch 321). Following the adoption of this statute, at least until 1979, the Boards of Trustees of the Police Department Pension Fund and the Fire Department Pension Fund granted accidental line-of-duty disability pensions and death benefits in heart cases without requiring proof that the condition was the result of any particular accidents or incidents in the employee's career. In 1973 the Corporation Counsel of the City of New York endorsed this action by issuing an opinion in which he concluded that it carried out the evident intent of the Legislature.
In recent years, however, the Mayor of the City of New York has spoken against the heart bill and in 1979 urged the Legislature not to reenact it. In addition the Corporation Counsel informed the board of trustees of the pension fund that "it does not have discretion to interpret" the statute "as it has in the past". Rejecting the 1973 opinion of his predecessor, the Corporation Counsel issued a new opinion (No. 22-79) in which he concluded that "accidental causation of heart disability or death is not to be presumed under 207-k"; instead the burden is on the applicant to *470 prove that the disabling or fatal heart condition was accidentally caused. He also informed the trustees that accidental causation could not be established by proof of a "health impairment which progressively develops from the performance of the duties" normally associated with the position. Rather the applicant must show that the condition was the result of a particular, sudden and unexpected event in which the employee was not performing "the ordinary activities expected of persons in such employment."
The sponsor of the 1979 reenactment of the statute expressly rejected this interpretation and stated on the record that the purpose of the bill was to create a presumption which "extended to every element of proof of a line of duty disability, including proof of the line of duty accidental nature of the disability * * * [this] presumption would prevail where there was not substantial competent evidence to show that the heart disability was not sustained by a line of duty accident."
The 1979 opinion of the Corporation Counsel produced a deadlock in each of the boards, which by statute are composed of representatives of the city and the employees, each group having an equal number of votes with 7/12ths necessary for a quorum and to sustain any board action (Administrative Code, §§ B18-13.0, B18-2.0, B19-7.56). The city trustees made clear their intention to deny any heart disability applications which were not supported by evidence of accidental causation as prescribed in the opinion of the Corporation Counsel, thus relegating the applicant to ordinary disability or death benefits (Matter of City of New York v Schoeck, 294 N.Y. 559). The trustees representing the employees then commenced these suits challenging the new interpretation of the statute and, to prevent the boards from granting only ordinary disability or death benefits by an equally divided vote, refused to attend meetings relating to heart disability applications, thus depriving the boards of a quorum. The city in turn brought mandamus proceedings against the employees' trustees to compel them to attend the meetings and vote on the applications.
In Matter of De Milia v McGuire, brought by the police officers as an article 78 proceeding, Justice ASCIONE converted *471 the proceeding into a declaratory judgment and held that the statute created a dual presumption of line-of-duty and accidental causation. Subsequently in Uniformed Firefighters Assn. v Beekman, Justice GREENFIELD held that the statute had the same effect in cases involving applications for line-of-duty, accidental disability filed by firemen with heart conditions. He also concluded that this determination rendered unnecessary the city's petition for an order of mandamus against the employees' trustees in Matter of City of New York v Mancuso[1].
On appeal to the Appellate Division the three suits were consolidated and affirmed, without opinion. The Appellate Division also granted the city and its representatives leave to appeal to this court.
The appellants note that by its terms section 207-k only creates a presumption that a heart condition suffered by a police officer or fireman was incurred in the performance of his duty, and makes no reference to accidental causation. They claim that the statute is clear and unambiguous on its face and that it should not be held to create any presumption that a heart condition was accidentally caused.
However, as we have recently indicated, "the absence of ambiguity facially is never conclusive. Sound principles of statutory interpretation generally require examination of a statute's legislative history and context to determine its meaning and scope" (New York State Bankers Assn. v Albright, 38 N.Y.2d 430, 434). Here the extensive legislative history shows that the literal reading proposed by the city would frustrate the statutory purposes.
As noted, the theory behind the bill, as outlined by its proponents, is not only that heart conditions are an occupational hazard for police officers and firemen, but also that this is a unique condition which generally is not the result of any particular incident but involves a gradual and progressive degeneration as a result of the continuous stress and strain of the job. The practical application of the *472 statute by the boards shows that they understood it to have the effect of dispensing with the need for heart disability applicants to point to particular accidents as the cause of the condition. This practical interpretation, involving operational practices, by the agencies primarily responsible for administering the statute is entitled to great weight (see, e.g., Kurcsics v Merchants Mut. Ins. Co., 49 N.Y.2d 451, 459). The Legislature which was annually apprised of the controversy surrounding the statute must have been aware of the way it was being interpreted and administered and by reenacting it on nine separate occasions, without any change in the wording, must be deemed to have accepted the interpretation (cf. Lucenti v Cayuga Apts., 48 N.Y.2d 530, 541). This is especially true of the most recent enactment when the sponsor of the bill expressly endorsed the accepted and long-standing interpretation.
We recognize that in similar statutes, relating to firemen and police officers employed by the State or localities outside the City of New York, the Legislature has, after some apparent experimentation, adopted a different approach to this type of presumption (see Retirement and Social Security Law, § 363-a).[2] With respect to police officers and firemen in the City of New York, however, the Legislature has not seen fit to change the statute or its settled effect despite the city's ardent efforts. For the courts to approve a change in the interpretation of the statute, which would blunt its known impact, would amount to judicial repeal.
Thus we agree with the courts below that plaintiffs are entitled to a declaratory judgment that section 207-k of the General Municipal Law creates a presumption that a disabling or fatal heart condition suffered by a New York City police officer or fireman was accidentally sustained as a result of his employment if not rebutted by contrary *473 proof. We also agree that this declaration eliminates the factor which caused the employees' trustees to absent themselves from board meetings involving heart disability applications thus rendering unecessary the city's petition for mandamus relief.
Accordingly, the orders of the Appellate Division should be affirmed.
JASEN, J. (dissenting).
The majority today holds that subdivision a of section 207-k of the General Municipal Law establishes a dual presumption that any disabling or fatal heart condition suffered by a New York City policeman or fireman is not only service connected, but is also the result of an accident, thus entitling the employee or his family to "accidental" rather than "ordinary" pension or death benefits for any such ailment. In my view, such an interpretation is contrary to the clear and unequivocal wording of the statute and was not intended by the Legislature. I, therefore, respectfully dissent.
In general, a New York City policeman or fireman is entitled to "accidental" as opposed to "ordinary" retirement or death benefits only if it can be shown that the condition causing the disability or death occurred in the line of duty and was the result of a specific accident. (Administrative Code of the City of New York, §§ B18-39.0, B18-43.0, B19-7.8, B19-7.84.) By enacting section 207-k (subd a) of the General Municipal Law, the so-called "heart bill", the Legislature significantly lessened the burden of proof imposed upon New York City policemen and firemen as an antecedent to the collection of "accidental" benefits by relieving them of the requirement of proving that the condition causing their death or disability occurred in the "line of duty". This result was obtained through the creation of a rebuttable statutory presumption that the ailment was "incurred in the performance and discharge of duty". (General Municipal Law, § 207-k, subd a.)[1]
*474 Nowhere in the statute is any mention made, directly or indirectly, of the further requirement that the disabling or fatal condition be the result of a specific accident. Indeed, it is indisputably clear that the statute does not provide for a presumption that the employee's disability or death was accidental. Nonetheless, a majority of this court has decided today that the Legislature, by explicitly creating one narrow presumption, has in fact created two and has, for some unknown reason, simply not bothered to spell out the second one in the statute.
The majority bases its conclusion solely upon the legislative history and prior administrative interpretation of the statute. While such interpretive guideposts may appropriately be used to discern the Legislature's intent where that body has ambiguously expressed its will, they may not be used as a license to ignore the plain meaning of a statute or as the justification to extend the terms of an otherwise clear legislative enactment. In the guise of construing the statute in light of its history to save it from "judicial repeal", the court has today judicially amended the statute to extend its scope by adding a second presumption which finds no support whatever in the language of the statute. In doing so, the court has gone beyond the bounds of proper judicial interpretation. Instead of interpreting the words of the statute, the majority has decided to rewrite them. I decline the invitation to sit as a member of a committee on revision. (Matter of Barton v Lavine, 38 N.Y.2d 785, 787.)
This court long ago decided that the best way to determine what the Legislature meant was to examine what it said. While a strictly literal reading of statutory language is rarely necessary and many extrinsic sources may properly *475 be consulted to assist the court in the interpretation of the words used by the Legislature, this court has consistently held that such sources are no substitute for the clear and unambiguous language of the statute. In McCluskey v Cromwell (11 N.Y. 593, 601-602), for example, this court stated: "[I]n the construction, both of statutes and contracts, the intent of the framers and parties is to be sought, first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable, to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture, in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction, for the purpose of either limiting or extending their operation. Courts cannot correct supposed errors, omissions or defects in legislation, or vary by construction, the contracts of parties. The office of interpretation is to bring sense out of the words used, and not bring a sense into them. (Lieber's Political and Legal Hermeneutics 87; 2 Ruth. Inst., ch. 7, § 2; Story on Const., § 392; Purdy v. People, 4 Hill 384; Smith's Statutes, &c., § 478; Waller v. Harris, 20 Wend. 561.)" This rule of statutory construction has been consistently followed by this court. (See, e.g., Matter of Barton v Lavine, 38 N.Y.2d 785, 787, supra; Matter of Roosevelt Raceway v Monaghan, 9 N.Y.2d 293, 305; Meltzer v Koenigsberg, 302 N.Y. 523, 525; Town of Putnam Val. v Slutzky, 283 N.Y. 334, 343; Matter of Hering v Clement, 196 N.Y. 218, 220-221; Settle v Van Evrea, 49 N.Y. 280, 281-282; Newell v People ex rel. Phelps, 7 N.Y. 9, 97 [JOHNSON, J., concurring].)
The majority attempts to avoid this settled rule of construction by noting that a literal reading of statutory terms is rarely "conclusive", relying upon New York State Bankers Assn. v Albright (38 N.Y.2d 430). Such reliance is, in my view, misplaced. As a general proposition, the majority is, of course, correct in its statement that stark *476 literalism is no substitute for reasoned interpretation, and the Bankers Assn. case clearly supports this notion. However, it is also clear that the court in Bankers Assn. did not intend to overrule the equally important rule of statutory construction that a clear statute needs no interpretation. Moreover, it must be remembered that what was rejected in Bankers Assn. was an attempt to artificially extend the terms of a statute beyond their intended meaning with an interpretation by a litigant which was at best only arguably supported by a literal reading of the statute. That case provides little authority for the judicial extension of a clear statute undertaken by the majority in the instant case.
Nor am I persuaded that the prior administrative interpretation of the statute compels the result reached by the majority. It is true that the Corporation Counsel of the City of New York had, between 1973 and 1979, consistently accepted the dual presumption upon which this court today places its imprimatur. However, we have only recently noted that where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight." (Kurcsics v Merchants Mut. Ins. Co., 49 N.Y.2d 451, 459.) Here, no special competence is required to understand the language used by the Legislature and the administrative interpretation clearly ignores that language. Hence, the prior opinions of the Corporation Counsel and the prior practice of the trustees of the various pension funds should be accorded no weight.
Finally, if there were any doubt that the Legislature understood how to create a dual presumption when it intended to, we need look no further than the analogous "heart bill" statutes applying to other police officers and firemen in this State to dispel this doubt. In 1969, the Legislature enacted section 363-a of the Retirement and *477 Social Security Law (L 1969, ch 1103, § 1) which explicitly contained a presumption that the heart ailments of covered firemen and policemen were the result of an accident. In 1973, that statute was amended to include a separate and distinct "line of duty" presumption much like the one embodied in subdivision a of section 207-k of the General Municipal Law. (L 1973, ch 1046, § 30.) In 1974, the Legislature deleted the "accidental injury" presumption in the Retirement and Social Security Law insofar as it applied to policemen while leaving intact the presumption for firemen. (L 1974, ch 967, § 1.) While the question of the effect of this deletion has not yet reached this court, it has been interpreted below as depriving such policemen of the benefit of this presumption. (Matter of Acciavatti v Levitt, 57 AD2d 131.) This legislative treatment of identical subject matter makes it clear that when the Legislature intends to afford a public servant the benefit of an "accidental injury" presumption, it knows full well how to enact one. Hence, where, as here, the Legislature fails to include such a presumption in a "heart bill", it can only be concluded that the omission was intentional.
In sum, it seems to me that neither the legislative history of subdivision a of section 207-k of the General Municipal Law or its prior administrative interpretation compels the result reached by the majorty today. I would, therefore, modify the orders appealed from in Uniformed Firefighters Assn. v Beekman and Matter of De Milia v McGuire by reversing so much of such orders as affirm judgments declaring that subdivision a of section 207-k of the General Municipal Law contains a presumption of accidental casualty and further modify such orders by declaring that the statute provides only for a rebuttable presumption that the disabling or fatal heart ailment of a New York City policeman or fireman was incurred in the line of duty.
I note also that I would grant the relief requested by the city in Matter of City of New York v Mancuso. (See Matter of City of New York v De Milia, 73 AD2d 849.) However, in light of the decision of the majority on the primary issue in these cases, there is no need to detail the reasons for my view on this issue.
In each case: Order affirmed, with costs.
NOTES
[1] The mandamus proceeding against the trustees of the Police Retirement Fund was decided prior to these suits (see Matter of City of New York v De Milia, 73 AD2d 849) and is not a part of this appeal.
[2] As originally enacted, section 363-a provided that a heart condition suffered by a policeman or fireman was presumed "to be the natural and proximate result of an accident" (L 1969, ch 1103). In 1973 the statute was amended to provide that the presumption extends to both service connection and accidental cause (L 1973, ch 1046, § 30). In 1974 it was again amended to provide that the dual presumption only applies to firemen. Policemen now only have a presumption that the condition was job related (L 1974, ch 967, § 1).
[1] The statute provides in full:

"§ 207-k. Disabilities of policemen and firemen in certain cities.
"a. Notwithstanding the provisions of any general, special or local law or administrative code to the contrary, but except for the purposes of sections two hundred seven-a and two hundred seven-c of this chapter, the workmen's compensation law and the labor law, any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death to a paid member of the uniformed force of a paid police department or fire department, where such paid policemen or firemen are drawn from competitive civil service lists, who successfully passed a physical examination on entry into the service of such respective department, which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence."