OPINION OF THE COURT
Edward J. Greenfield, J.
Motions numbered 108 of January 11, 1982 and 174 of November 10, 1981 are consolidated for disposition.
In each, defendant City of New York moves pursuant to CPLR 3211 (subd [a], par 7) to dismiss the complaint upon the grounds plaintiffs have failed to state a cause of action for counsel fees and expenses in connection with prior Heart Bill litigation.
In 1979, a controversy arose among the city members and union members of the Board of Trustees (Board) of the Fire Department Pension Fund (F.D. Fund) and also among the respective members of the Police Department *577 Pension Fund (P.D. Fund). The controversy centered on what constituted an accidental death or disability under section 207-k of the General Municipal Law (the Heart Bill). The union members of each Board voted to grant line-of-duty accidental death or disability benefits unless the applicant affirmatively proved the death or disability was caused by an identified accident.
Each pension fund is administered by its Board and disability pensions may only be awarded upon a majority vote of its members. The F.D. Fund’s Board has 24 votes (Administrative Code of City of New York, § B19-2.0), 12 controlled by the union and 12 controlled by the city and resolutions must be adopted by at least 14 votes (Administrative Code, § B19-2.0, subd b). Similarly the P.D. Fund’s Board has 12 votes, 6 controlled by the union and 6 controlled by the city and at least 7 votes are required to adopt a resolution (Administrative Code, § B 18-2.0, subd b).
Because of the even split between the union members of the Boards and the city members concerning their respective interpretations of what constituted an accident within the meaning of the Heart Bill, the requisite majority vote was not achieved and applicants were retired on ordinary disability (Matter of City of New York v Schoeck, 294 NY 559). The union members of the P.D. Fund retained Botein, Hayes, Sklar & Herzberg as counsel, and the union members of the F.D. Fund retained Gordon & Shechtman as counsel to challenge the interpretation of the city-controlled members on the Heart Bill retirement applications. In both cases, the union position was sustained (Uniformed Firefighters Assn. v Beekman, 52 NY2d 463; De Milia v McGuire, 52 NY2d 463).
Upon this motion to dismiss, defendants contend that the actions were commenced on behalf of plaintiff unions and their constituencies to challenge the pension funds’ failure to grant line-of-duty disability pensions under the Heart Bill. However, the prior record of both the police (De Milia v McGuire, 52 NY2d 463, affd 76 AD2d 1039, affg NYLJ, Nov. 20, 1979, p 6, col 1 [Ascione, J.]) and fire fighters (Uniformed Firefighters Assn. v Beekman, 52 NY2d 463, affg 76 AD2d 1039, affg 104 Misc 2d 829 [Greenfield, J.]) *578 Heart Bill litigation cases clearly shows that the plaintiff trustees in bringing their respective declaratory judgment actions acted qua members of the Board of Trustees and in title and text of all pleadings in the litigation, sued, appeared, acted and described themselves to be suing and acting as members of the Board of Trustees of the New York City Police Department and Fire Department Pension Funds. Moreover, the defendants in those actions did not challenge the standing of those plaintiffs to bring suit nor did those defendants dispute the right of the trustee plaintiffs to retain their own counsel. Of course, acquiescence in the right of an adverse litigant to select its counsel cannot be equated with any agreement to pay such counsel.
Defendants also assert that absent an agreement or specific statutory authority, a private litigant may not recover his counsel fees from an adverse litigant (see Soffer v Glickman, 27 Misc 2d 721, 724-725; Judiciary Law, § 474; Doyle v Allstate Ins. Co., 1 NY2d 439, 444; Matter of Loomis, 273 NY 76, 81-82).
Section 474 of the Judiciary Law specifically provides that: “[t]he compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law”. (Emphasis supplied.) The issue here presented is whether the responsibility for payment of the plaintiffs’ counsel fees is implied in law and is not otherwise restrained or prohibited.
In order to address this issue, a brief summary of the circumstances leading up to the commencement of the two actions is necessary.
In 1970, after years of effort by police and fire fighter organizations, there was enacted the Heart Bill (General Municipal Law, § 207-k, as added by L 1970, ch 805). The bill had previously been passed by the Legislature 13 previous times and vetoed by the Governor on each occasion. The purpose of the law was to relieve the pension applicant of the onerous burden of proving the connection between the applicant’s heart condition and his service by providing for a rebuttable presumption that an applicant’s heart disease was incurred as a result of his service. The statute was enacted originally for a period of one year. However, despite considerable opposition, it was re-en *579 acted by the Legislature annually until 1979, and then extended two years to June 30, 1981 (L 1979, ch 321). During this period of time and up to February, 1979, section 207-k of the General Municipal Law was uniformly construed in conformity with its above-described purpose by the successive Boards of Trustees of the P.D. Fund and the F.D. Fund, by the New York City Employees Retirement System, and by a succession of Corporation Counsels for the City of New York including J. Lee Rankin, Norman Redlich, Adrian P. Burke and W. Bernard Richland.
In February, 1979, the then Corporation Counsel, Allen G. Schwartz, in conformity with the vehement and vocal opposition to the law, expressed by Mayor Edward Koch “rendered an opinion that despite the presumption of section 207-k * * * that heart disease sustained during the period of service of a uniformed policeman or fireman was incurred in the performance and discharge of duty, the disability pension applicant would still have to prove ‘that his disability is the result of some discrete and identifiable, unusual and sudden event which alone would constitute an “accident” * * *’ (Corporation Counsel Opn. No. 25-79.) He advised the board of trustees that they could not apply and interpret the disability sections as they had in the past.” (Uniformed Firefighters Assn. v Beekman, 104 Misc 2d 829, 833-834, affd 52 NY2d 463, 469, supra.)
This reversal of position created turmoil in the proceedings of the Boards of Trustees. The city-controlled members voted to deny accidental disability benefits unless a specific accident was demonstrated, but the union-controlled members, relying on the prior interpretation of section 207-k, voted to grant disability benefits without such proof. The Boards’ votes were split 50-50 and, in consequence of not having obtained the majority necessary to adopt resolutions (Administrative Code, § B18-2.0, subd b [for the P.D. Fund]; § B19-2.0, subd b [for the F.D. Fund]), applicants were retired on ordinary disabilities. Thus, the Corporation Counsel’s new interpretation was adopted by the Boards of Trustees by default. To rectify this situation, the union trustees retained counsel and commenced declaratory judgment actions.
*580 It is beyond peradventure that the position taken by the union trustees was adverse to that of the Corporation Counsel and that Corporation Counsel could not in good conscience and in law represent them. In fact, the Corporation Counsel represented the city trustees in both actions. Plaintiffs here contend that Corporation Counsel could not have sought to represent the union trustees under the Canons of Ethics and the position now taken by the city in opposition to the request for counsel fees is contrary to established principles and practice commonly adhered to by the city, by city agencies and by the New York City Corporation Counsel. Cited examples include the recent retention by the city council at city expense of the law firm of Paul, Weiss, Rifkind, Wharton & Garrison to represent its interests in redistricting litigation. The hiring of independent counsel was predicated upon a “ Very real possibility of a future conflict in the legal positions and litigation strategies to be pursued by the City Council as opposed to the mayor’ ”. (Gerena-Valentin v Koch, NYLJ, Oct. 5, 1981, p 14, cols 3, 4 [Helman, J.].) In Golden v Koch (49 NY2d 690), all members of the city council other than the Mayor were represented by independent counsel at city expense and the Mayor was represented by Corporation Counsel in a case where the board of estimate sued the Mayor to obtain a declaratory judgment concerning the right of the Mayor to vote on certain budget modifications. Similarly, in Board of Educ. v City of New York (41 NY2d 535), the board of education, an “agency” of the city (see NY City Charter, § 1150, subd 2) was represented by independent city-paid counsel in its suit against the city which was represented by Corporation Counsel. Other cases where independent counsel was retained and was paid for by the city include Michael v Bellamy (80 AD2d 147); Board of Educ. v Goldin (94 Misc 2d 574, affd 72 AD2d 603); New York City Housing & Redevelopment Bd. v Foley (23 AD2d 84); and Chance v Board of Examiners & Bd. of Educ. (330 F Supp 203, affd 458 F2d 1167, after remand 496 F2d 820, after remand 534 F2d 993).
As previously noted, the Pension Funds are agencies within the meaning of the New York City Charter (§1150, subd 2) since the expenses of the funds’ operations are paid *581 from the city treasury (Administrative Code, § B18-2.0, subd d; § B19-2.0, subd d). No agency may incur an expense outside its budget appropriation (NY City Charter, § 1111). Such expenses in excess of $10,000 (in their complaints, plaintiffs in the fire department case seek at least $100,000 and not less than $10,000 in the police department case) may be incurred provided there has been obtained the prior approval of a majority of the board of estimate after a public hearing on the matter (NY City Charter, § 349; see, generally, NY City Charter, § 341). The city thus argues that these applications for counsel fees constitute an unwarranted and unlawful attempt to invade the New York City Treasury (Administrative Code, § 1111-1.0, subd a).
The city argues that this very issue was determined by the Court of Appeals in Seifv City of Long Beach (286 NY 382). In Seif, the Mayor of Long Beach retained private counsel to institute legal proceedings to compel the Board of Supervisors of Nassau County, sitting as a board of equalization, to exclude certain property from the total assessed value of property in the City of Long Beach. The court stated that notwithstanding the fact that the City of Long Beach knew of and acquiesced in the retention of private counsel and gladly accepted the benefits of that representation, these circumstances did not constitute a ratification sufficient to compel payment of the attorney’s fees. “Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city.” (Seif v City of Long Beach, 286 NY, at p 387; see, also, NY City Charter, §§ 394, 395.)
But Seif (supra) does not address the particular problems here presented. In Seif, the Long Beach Corporation Counsel was apparently always ready, willing and able to prosecute the case and in fact was directed to file a notice of appeal of the Appellate Division’s order in the case. In this case, independent counsel was required to challenge the opinion of the very Corporation Counsel that the defendants suggest should have been retained.
*582 Thirty years after Seif (supra), the Court of Appeals reaffirmed its opinion stating that “an attorney may not be compensated for services rendered [to] a municipal board or officer unless he has been retained in accordance with statutory authority.” (Cahn v Town of Huntington, 29 NY2d 451, 454.) The court, however, went on to state that (p 455): “[notwithstanding lack of specific authority, a municipal board or officer possesses implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where the municipal attorney refused to act, or was incapable of, or was disqualified from, acting. (See, e.g., Matter of Fleischmann v. Graves, 235 N. Y. 84, 90-91; Matter of Hiscox v. Holmes, 239 App. Div. 602; Judson v. City of Niagara Falls, 140 App. Div. 62, affd. 204 N. Y. 630; see, also, Ann., 75 ALR 2d 1339, § 4, pp. 1348-1350; cf. Rockefeller v. Taylor, 69 App. Div. 176.)”
The situation here presented was one where “the corporation counsel himself is confronted with the dilemma of either on the one hand refusing to discharge his statutory duty, or of assuming to act as the * * * [trustees] legal advisor under circumstances which should in no event be required of any honest and self-respecting attorney.” (Judson v City of Niagara Falls, 140 App Div 62, 66, supra.) Where, as here, the question of conflict of interest is so obvious, there can be no requirement that the trustees first request that Corporation Counsel represent them and then retain independent counsel upon his refusal (see, e.g., Business Corporation Law, § 626, subd [c]; Barr v Wackman, 36 NY2d 371).
Defendant’s reliance upon Corning v Village of Laurel Hollow (48 NY2d 348) is misplaced. In that case, in a 4 to 3 opinion, the Court of Appeals citing Seif (supra) again stated that plaintiff’s counsel was not entitled to reimbursement where they had not been retained in accordance with statute and further that plaintiffs, former municipal officers, were not entitled to reimbursement where they had been sued personally in a Federal civil rights action (US Code, tit 42, § 1983) for their actions while in office. The court held that the defense of that action was purely *583 personal and the village obtained no benefit. In that case, plaintiffs were initially represented by the Nassau County Attorney, presumably at county expense, but when summary judgment on the issue of liability was granted (Laverne v Corning, 316 F Supp 629), plaintiffs dismissed the Nassau County Attorney and, on their own initiative, privately retained a prestigious Wall Street law firm as counsel. Counsel eventually was able to have the action dismissed (Laverne v Corning, 376 F Supp 836). There can be no doubt that where there is an obligation by the municipality to defend or prosecute an action and that duty is undertaken, the board or officer represented has no authority to discharge municipal counsel — be it the Village Attorney, Town Attorney, County Attorney or Corporation Counsel — and retain independent counsel at municipal expense.
In this case, the Corporation Counsel did not and, indeed, under the Code of Professional Responsibility (see, e.g., EC 5-15), he could not undertake to represent the very trustees who sought to vacate his opinion. Moreover, the trustees neither sought nor obtained any personal benefit from the declaratory judgment action they commenced; rather, the actions were prosecuted by 50% of the trustees to compel the remaining 50% of the trustees to observe their fiduciary duties to the trust and end a deadlock created by the Corporation Counsel’s opinion. It is beyond cavil that a trustee owes a duty to the beneficiaries of the trust to take reasonable steps to realize on claims which he holds in trust and trustees have an inherent equitable right to be reimbursed all expenses which they reasonably incur in the execution of the trust including all reasonable fees for legal services in discharge of their duties (see 3 Scott, Trusts [3d ed], § 188.4; Perry, Trusts, §§ 910, 917, 918; Woodruff v New York, Lake Erie & Western R. R. Co., 129 NY 27; Corn Exch. Bank Trust Co. v Bankers Trust Co., 268 NY 224; Schoenherr v Van Meter, 215 NY 548).
Accordingly, this court concludes that the plaintiffs in the original actions — De Milia v McGuire (52 NY2d 463, supra) and Uniformed Firefighters Assn. v Beekman (52 NY2d 463, supra) — brought the lawsuits as trustees of the pension funds in circumstances where they could not be *584 represented by the Corporation Counsel and were thus justified in retaining independent counsel. The retained law firms undertook a public duty, performed a public service in which they were ultimately successful and are entitled to compensation for their services.
The motions to dismiss the complaints are denied and defendants are directed to serve their answers within 10 days after service upon them of a copy of this order with notice of entry.