OPINION OF THE COURT
Bellacosa, J.
We agree with the views expressed in the dissent at the Appellate Division that the pertinent statute is plain on its *672 face, warranting summary judgment in favor of plaintiffs on the first cause of action entitling them as part-time employees to membership in the New York City Employees’ Retirement System (NYCERS). Thus, the Appellate Division order insofar as appealed from should be reversed and the certified question answered in the negative.
Appellants are seven part-time doctors and their collective bargaining representative (jointly Doctors Council) which represents 1,300 part-time and 600 full-time doctors employed by the City of New York (City) or the New York City Health and Hospitals Corporation (HHC). In December 1981, 4 of the 7 doctors, already members of respondent NYCERS, sought a change in their retirement status and the other 3 sought retroactive membership.
Previously, in January 1981, respondent Herkommer, NYCERS’ Executive Director, informed his Board of Trustees that part-time employees, primarily doctors and dentists in these instances, had been mistakenly afforded NYCERS membership. After reviewing the history and an in-house evaluation of this prior practice, together with a memorandum from the New York City Corporation Counsel concluding that the Board lacked power to provide NYCERS eligibility to part-time employees, the Board adopted a November 6, 1981 resolution declaring its impotency in this regard. It added that part-time employees should be denied membership in the future, but that part-time employees accepted into the system prior to the resolution would be permitted to continue as members. The appellant doctors’ applications were not processed.
Doctors Council brought an action seeking declaratory and injunctive relief directing that part-time doctors are entitled to NYCERS’ membership and that otherwise qualified part-time doctors within the system are entitled to change their membership status. Defendants countersought a declaration that NYCERS’ membership is limited to full-time employees.
Each side moved for summary judgment; the City’s papers contended that NYCERS had a continuing and long-standing policy of excluding part-time employees from membership, although some had inadvertently been accepted. In support of this claim, NYCERS relied upon: the Retirement System Handbook which provides that membership is available to "employees in full-time positions”; opinions by City Corporation Counsels from 1936, 1937 and 1974 stating part-time *673 employees are ineligible; and three memoranda from 1970 and 1971 by an ex-Secretary of NYCERS (the then chief administrative position in NYCERS). NYCERS argued in the lower courts that these materials are bolstered by rule 11 (f), adopted in 1947, which purportedly formalized the exclusion of part-time employees consistent with the Corporation Counsel opinions of 1936 and 1937. Rule 11 (f) provides in part that "[n]o person who is paid other than a regular per annum salary, [or] who renders less than full-time service * * * shall, by such service, acquire any right or benefit in the retirement system.” This argument was abandoned before our court.
The plaintiff doctors asserted their reliance upon representations by the City of entitlement to membership in NYCERS and that it had been the "regular and consistent policy” of NYCERS prior to November 6, 1981 to grant membership to part-time doctors. The Executive Director of the Doctors Council added that as a part-time doctor he had been "required” to join the retirement system as a "condition of employment”, that approximately 500 part-time doctors in the employ of the City and HHC were NYCERS members, and that hundreds of others had retired with NYCERS benefits. The ex-Secretary of NYCERS, who authored the 1970 and 1971 memoranda relied upon by the City, stated that prior to 1970 all part-time employees were entitled to NYCERS membership and that the memoranda reflected a change in position which was based solely upon the advice of the Corporation Counsel. Both those memoranda expressed that physicians and dentists had been exempted from the so-called general exclusion of part-time employees from membership. A former City Assistant Director of Labor Relations, who had negotiated contracts covering medical personnel employed by the City and HHC, maintained that during his tenure doctors were entitled to and accorded NYCERS membership, that doctors were hired on the representation of the availability of NYCERS membership, and that he was unaware of any doctor denied such benefits.
Insofar as pertinent, Special Term rejected plaintiffs’ motion for summary judgment and declared that Administrative Code of the City of New York § 13-101 (3) and § 13-104 did not entitle the doctors to NYCERS membership. Noting that there was no legislative history for the section, the court relied largely upon the history of the City’s asserted construction of the code provision and rule 11 (f).
The Appellate Division agreed in that respect, relying on *674 the principles that "[ajbsence of facial ambiguity is * * * rarely, if ever, conclusive” and that "[s]ound principles of statutory interpretation generally require examination of a statute’s legislative history and context to determine its meaning and scope” (New York State Bankers Assn. v Albright, 38 NY2d 430, 434, 436; Uniformed Firefighters Assn. v Beekman, 52 NY2d 463, 471). It accepted rule 11 (f), the NYCERS staff memoranda, the opinions of the Corporation Counsel, and the absence of legislative amendment of this historical construction as the basis for holding that these part-time City employees are not entitled to NYCERS membership.
Presiding Justice Murphy disagreed. He reasoned that these part-timers were eligible for membership pursuant to the unambiguous language of the code which is controlling under clear precedent, and that the doctrine of practical construction was inapplicable because NYCERS never had a consistent policy of excluding part-timers and, even if it had such a policy, it would be of no consequence where contrary to the plain language of the code. Leave to appeal on a certified question was granted by the Appellate Division.
The membership requirements of NYCERS have not changed since it was created in 1920 (see, L 1920, ch 427). "[Membership * * * shall consist of * * * [a]ll persons in city-service” (Administrative Code of City of New York § 13-104 [former § B3-3.0]). " 'City-service’ shall mean service, whether appointive or elective, as an officer or employee of the city * * * so far as such service is paid for by the city” and shall include "[sjervice as a paid employee of * * * the New York city health and hospitals corporation” (Administrative Code § 13-101 [3] [a], [b] [former § B3-1.0 (3)]).
In Matter of Verdecanna v Carey (285 NY 130, 135), this court held that employment as a part-time street sweeper satisfied the criteria of "service in said department” entitling the employee’s widow to pension fund benefits. The statutory eligibility criteria in Verdecanna (supra) was uncommonly simple as is the "in city-service” standard of this case.
"Where the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists. Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute” (Bender v Jamaica Hosp., 40 NY2d 560, 561-562 [citations omitted]). "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature, and where *675 the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208 [citations omitted]).
This is not to say, however, that the language of a statute must in all circumstances be literally or mechanically applied when, due to significantly changed circumstances, such application would cause an anachronistic or absurd result contrary to the contextual purpose of the enactment. Here, by contrast, the statutory protection of all persons in city-service, designed to exclude persons such as independent contractors, remains as important and relevant in this, case as when the statute was passed and continues to give effect to the statute’s intended purpose and policy.
The reasoning, adopted by the lower courts, of New York State Bankers Assn. v Albright (38 NY2d 430, supra) and Uniformed Firefighters Assn. v Beekman (52 NY2d 463, supra) is inapplicable to the unqualified statutory definition in this case. Consideration of extrinsic factors is impermissible where the Legislature’s direction is clear; where the statute is not ambiguous when read in context; where the plain meaning of the statute would not lead to " 'absurd or futile results’ ” or even unreasonable results " ' "plainly at variance with the policy of the legislation as a whole” ’ ” (New York State Bankers Assn. v Albright, 38 NY2d 430, 437, supra, quoting United States v American Trucking Assns., 310 US 534, 543-544). Nor is there in this case any "extensive legislative history [which] shows that the literal reading proposed * * * would frustrate the statutory purposes” (Uniformed Firefighters Assn. v Beekman, 52 NY2d 463, 471, supra).
Even if the practical construction by NYCERS, now urged by the City was itself consistent and definitive, which it is not in this case, no special interpretative or policy deference should be accorded against the plain language of the statute. The interpretation of this statute does not require special "knowledge and understanding of underlying operational practices or entail[s] an evaluation of factual data and inferences to be drawn therefrom” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). The critical eligibility words are "[a]ll persons in city-service” and "employees” and they are nowhere limited or qualified. Thus, in this case, we need go no further than the statute (id., at 459; Servomation Corp. v State Tax Commn., 51 NY2d 608, 613). To employ practical con *676 struction analysis under these facts "does nothing more than urge ambiguity where none exists” (Sega v State of New York, 60 NY2d 183, 190).
The record establishes, in any event, that NYCERS had no practical construction which could have been relied upon in construing the Administrative Code provision. The City argued that NYCERS’ rule 11 (f) was adopted to implement formally the Corporation Counsel’s opinions of 1936 and 1937 that part-time employees were not entitled to membership. Insofar as only one element of the rule concerns full-time employment, the City’s argument could succeed only if the rule were read disjunctively. Applying the criteria of the rule separately would have the effect of excluding full-time employees who fail to meet any of the other components (e.g., full-time legislative sessional employees). The City now concedes that the criteria of rule 11 (f) should be read conjunctively, and that it was meant to exclude persons such as independent contractors, and that the rule does not deal expressly with the exclusion of part-timers. This very vacillation on the existence of implied authority for an exclusion of part-time employees undermines the reliance on NYCERS’ practical construction given by the Appellate Division. A practical construction of a law will not be applied by courts where the proffered interpretation has been erratically applied or is contrary to the plain wording of the statute itself (compare, Matter of Hellerstein v Assessor of Town of lslip, 37 NY2d 1).
The NYCERS Board of Trustees surely lacks the authority to create retirement eligibility; it likewise lacks the power to disentitle employees whom the Legislature has endowed. To countenance the latter, as has been urged here by the City, would allow the agency to, in effect, amend the heart of this statute. "An administrative agency cannot by regulatory fiat directly or indirectly countermand a statute enacted by the Legislature” (Servomation Corp. v State Tax Commn., 51 NY2d 608, 612, supra; see, Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459, supra). Where, as here, the statute described the particular class of persons, "an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240; see, Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345). Thus, the resolution of the NYCERS Board of Trustees cannot be legitimized by judicial ratification (see, Matter of Industrial *677 Commn. of State of N. Y. v Five Corners Tavern, 47 NY2d 639, 646-647).
The statutory eligibility for NYCERS membership as applicable to these plaintiffs, part-time doctors in New York City Health and Hospitals Corporation employ, is plain and unqualified and must be given effect. That is the judicial function in this case. Fiscal, collective bargaining and other public policy ramifications of this case in regard to this result and its precedential implications are concerns for the legislative and executive functions (Matter of Hellerstein v Assessor of Town of lslip, 37 NY2d 1, 13-14, supra).
Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, with costs to plaintiffs, summary judgment should be granted declaring in favor of the plaintiffs on the first cause of action, and the certified question should be answered in the negative.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order insofar as appealed from reversed, etc.