OPINION OF THE COURT
Richard Lee Price, J.
In this CPLR article 78 proceeding petitioner seeks a judgment vacating and annulling the determination of the respondent which denied the petitioner’s request for accidental death benefits under section B18-39.0 of the Administrative Code of the City of New York.
Petitioner contends that Police Officer Michael Gallagher was killed during the performance of an official duty, to wit, the protection of fellow Police Officer Gregory Cassin. Petitioner (the deceased’s mother) applied for line-of-duty accidental death benefits. Her application was denied on April 27, 1981 by the New York City Police Pension Fund. It is respondent’s contention that the officer’s death was not considered a “line of duty” death and, therefore, the officer’s beneficiary was not entitled to those benefits arising from a “line of duty death”.
On December 30, 1978 Police Officer Gallagher and his partner Officer Gregory Cassin participated in a hockey *185 game as members of the New York Police Department hockey team. They later stopped off at a neighborhood lounge in Astoria. Officer Cassin stated in his report that while standing at the bar he noticed two white males (Mr. Hogan and Mr. Phelan) staring at him intently. Cassin, at this point, decided to leave the lounge and began walking toward the door. Although Cassin tried to leave, he was prevented from doing so by one of the men who deliberately ánd intentionally blocked his exit. Cassin withdrew his off-duty handgun from his ankle holster and placed the gun in his coat pocket; he admitted doing so because he “felt the man was looking for trouble”. As Cassin was leaving, the bouncer approached him and asked him what the trouble was. Cassin said there was no trouble and as he left, he saw the bouncer holding back the bearded white male who previously blocked his exit. Immediately thereafter three or four men followed Officer Cassin outside. Officer Gallagher’s brother, John, who witnessed the above events, told Officer Gallagher what had transpired between Cassin and the two white males. Officer Gallagher immediately rushed outside to assist Cassin, when he was assaulted by Phelan and was caused to fall, striking his head. Gallagher lost consciousness and was taken to the hospital where he later died. Shortly thereafter the deceased’s mother submitted a request for line-of-duty death benefits. Her application was denied pursuant to a meeting of the board of trustees (Police Pension Fund, art 2) where it was decided that Gallagher’s death did not qualify as a “line of duty” death. Although respondent received numerous affidavits from various officers and witnesses, attesting to the fact that Gallagher was slain while going to the aid of a fellow police officer, respondents refused to recognize Gallagher’s death as anything other than an “ordinary death”.
Section B18-39.0 of the Administrative Code provides that to qualify for “line of duty” death benefits, an accident must have occurred and that accident must have been service related. The determination as to whether a deceased police officer was “on” or “off-duty” at the time of his death or whether he was killed in the line of duty for purposes of “accidental death benefits” is a question for the pension board (Matter of Brady v City of New York, 22 *186 NY2d 601). The pension board (the Board) has a duty to determine from all available evidence whether the officer’s death was sustained while in the performance of his duties. The Board must make a careful and painstaking assessment of all evidence. The court in Matter of Brady v City of New York held that petitioner was entitled to submit police department records and testimony of police department personnel regarding facts relevant to the issue of the deceased’s “line of duty” status. Consequently, although an officer is technically “off duty”, the Board must consider all the evidence to determine whether the death was a natural and proximate cause of “city service” so as to entitle the deceased to “line of duty death benefits”.
Petitioner has the burden of establishing the proximate link between his death (or disability) and police service (Matter of Drayson v Board of Trustees of Police Pension Fund of City of N. Y., 37 AD2d 378). Petitioner submitted affidavits attesting to the fact that the death was a direct result of Gallagher’s attempt to assist a fellow officer after being informed of a hazardous and potentially deadly situation. The mere fact that Gallagher was technically “off duty” does not and cannot automatically preclude a ruling that he was killed in a “line of duty” situation. When a deceased officer’s death is causally related to helping a fellow officer in need of assistance, he cannot be penalized by the time or hour of assistance (see Matter of Brady v City of New York, supra).
Respondents contend that Gallagher’s assistance must be categorized as one friend aiding another friend instead of one off-duty police officer responding to the call of a brother officer in trouble. Respondent’s decision to deny petitioner’s application is predicated upon an oblique implication that the death of Gallagher was causally related to something other than the deceased’s recognized responsibility as a policeman.
Although an officer is technically within the “off duty” classification, as a member of the force he is subject to duty at all times (except when on sick leave) (Collins v City of New York, 7 NY2d 822, 824). He is required to be available to perform on his employer’s behalf at all times even though he may be technically off duty. The fulfillment of *187 this obligation, to be available for service and to be prepared for service, constitutes positive performance of the officer’s employment (Collins v City of New York, at pp 823, 824). Even if the off-duty officer’s performance is done in a negligent manner it will not be viewed separately from the performance of the employer’s command. Thus, in Collins, the city and the police officer were held liable for the negligent shooting by an off-duty policeman.
Respondents’ denial of line-of-duty benefits, if taken at face value, could establish a dangerous precedent by discouraging off-duty officers from assisting their fellow officers solely by reason of the fact that the officers are friends. Public policy dictates that police officers are to be commended for their duties, assistance, and willingness to confront dangerous and often deadly situations for the protection of the public. An officer who is killed while fulfilling his duties cannot be ignored or brushed aside merely because he is technically “off duty”. In an effort to carry out the statutory purpose and implement public policy the courts have held that there is a “presumption” that the police officer’s disability had been accidentally sustained as a result of employment. If said presumption is not rebutted by contrary proof, the employee would be entitled to accidental line-of-duty pension benefits. (Matter of DeMilia v McGuire, 52 NY2d 463.)
In Matter of Schussler (NYLJ, Aug. 27, 1981, p 6, col 2) the court held that public policy dictates the awarding of special pension benefits to police officers. In DeMilia (supra), the court held that inasmuch as the genesis of the ailment (worsening heart condition) would be viewed as job related, the nature of the ailment required a ruling that that condition was “accidental” within the meaning of the statute and rules. The term “accident” as used in the pertinent statutes should be judged by the “results” and where there are unforeseen and unintended consequences, the criteria of an “accident” can be said to have been met (Matter of Cavanagh v McGuire, NYLJ, May 6, 1981, p 10, col 6).
Cognizant of the limited review of the Board’s action which is available, this court is nevertheless constrained to say, that in light of all the circumstances, the Board has *188 not fulfilled its duty under the law to take evidence of all the facts and make an independent determination of the issues based upon the evidence and the law. Petitioner has unquestionably sustained its burden of proof by clearly establishing a causal relationship between the death of Gallagher and his performance of police business; to wit, that the cause of Gallagher’s death was the performance of one off-duty officer fulfilling his responsibilities by responding to the call of a fellow officer in trouble. Respondents have failed to rebut the presumption that Gallagher acted in accordance with the express requirement that a New York City police officer (regardless of his technical on- or off-duty status) is subject to duty at all times as a condition of employment by the New York City Police Department. Respondents’ papers fail to reveal the necessary evidence which would warrant the conclusion that petitioner is only entitled to ordinary death benefits. Respondents’ denial of benefits was a violation of CPLR 7803 (subd 3) in that it was arbitrary, capricious and an abuse of discretion. With the exception of the technical point that Gallagher was not within the particular hours of the day in which he was required to conduct specific police business, no tenable argument can be made that Officer Gallagher’s action did not come within the line of duty.
Accordingly, the petition is granted and this matter is remanded to the respondent board of trustees with a direction that petitioner be granted service-connected accidental line-of-duty death benefits and pension.