opinion of the court
Bernard L. Reagan, J.
In this civil antitrust action there are various motions pending before the court. The main issue to be addressed is the interpretation of the exemption from the Donnelly Act *364 (General Business Law, § 340 et seq.) given to co-operative associations of dairymen (General Business Law, § 340, subd 3). All defendants have moved to dismiss the complaint, claiming that it fails to state a cause of action because of this exemption. Two defendants, Oneida-Madison Milk Producers Co-operative Association, Inc., and Queensboro Farm Products, Inc., have requested their dismissal motions be treated as summary judgment motions pursuant to CPLR 3211 (subd [c]), but the court in its discretion declines to do so.
Earlier this year, defendant Northeast Dairy Co-operative Federation, Inc. (NEDCO), a federation of co-operatives, purchased a milk manufacturing plant in Fraser, New York, from Dellwood Foods, Inc. (Dellwood). NEDCO and Dellwood also entered into an agreement whereby NEDCO would provide Dellwood’s milk requirements for a 10-year period. NEDCO is a New York corporation which has approximately 3,500 farmer members and 57 local cooperatives located in New York, Pennsylvania and New Jersey.
By letter dated January 5, 1982, Dellwood informed the approximately 748 farmers it had been purchasing raw milk from that its Fraser plant had been sold to NEDCO and Dellwood would no longer be purchasing their milk. Dellwood further advised these farmers that NEDCO assured a milk market for all of its co-operative members, including those Dellwood farmers who would choose such membership. NEDCO also sent a letter to the Dellwood farmers with similar information dated January 4, 1982.
In order to join NEDCO, the Dellwood farmers were required to pay an initial fee of 20 cents per hundredweight of the milk they sold to Dellwood in 1981, which according to the Attorney-General, is approximately $2,000 for the average farmer, and sign a one-year membership contract. NEDCO would deduct from the minimum price payable to the farmers 11 cents per hundredweight for co-operative costs. NEDCO maintains these charges were not discriminately sought from the Dellwood farmers and the Attorney-General has not claimed that they were.
The gravamen of plaintiff’s complaint is that the membership fee and deduction for co-operative costs were exces *365 sive; that, therefore, the Dellwood farmers did not want to sell to NEBCO; and instead, they attempted to sell to other purchasers but were unable to do so because of an agreement among defendants and others which was in violation of section 340 of the General Business Law. The complaint alleges that the defendants agreed to allocate the Dellwood farmers to NEBCO and, with the exception of NEBCO, refused to purchase raw milk from the Dellwood farmers and further agreed to persuade, induce and coerce other milk dealers to refuse to purchase raw milk from the Dellwood farmers. The Attorney-General contends that this agreement was put into effect and alleges that defendant Glen & Mohawk Milk Association, Inc., exerted pressure on the Dolgeville Dairy Co-operative to rescind all but 6 of the 45 contracts it had entered into with former Dellwood farmers.
Defendants, NEBCO and Oneida-Madison Milk Producers Co-operative, Inc. (Oneida-Madison), and only these defendants, are dairymen’s co-operatives. The other corporate defendants are proprietary handlers and are licensed by the State of New York, as are the co-operative defendants. If the conduct complained of falls within the dairymen’s co-operative exemption, then the Donnelly Act simply does not apply and the Attorney-General has not stated a cause of action. On the other hand, if the exemption does not apply, the plaintiff has clearly made out a cause of action against these defendants.
Subdivision 3 of section 340 of the General Business Law reads as follows: “3. The provisions of this article shall not apply to cooperative associations, corporate or otherwise, of farmers, gardeners, or dairymen, including live stock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations, nor to bona fide labor unions.”
The Attorney-General maintains that not only does this exemption not exonerate the non-co-operative defendants, it is argued that it is of no avail to the co-operative defendants either. Between making this argument and succeeding with it, the plaintiff faces two formidable barriers: Barns v Dairymen’s League Co-op. Assn. (220 App Div 624) and Margrove, Inc. v Upstate Milk Coop. (79 Misc 2d *366 309, affd sub nom. Margrove, Inc. v Wegman’s Food Markets, 49 AD2d 669). Both of these cases were decided in the Fourth Department, the department in which this court sits.
In Barns (supra), the Dairymen’s League Co-operative Asociation, Inc., and Borden’s Farm Products Company entered into an agreement whereby Borden’s agreed to buy all its milk from the Dairymen’s League and not to purchase any milk from any producer who had not signed a certain pooling agreement by which the producers would become members of the co-operative. The plaintiff was a farmer who refused to sign the agreement and, therefore, the defendant co-operative refused to accept his milk. The court concluded that the agreement between the defendants was not illegal. The opinion did note that the defendants had not been involved in any “black-listing or boycotting” (Barns v Dairymen’s League Co-op. Assn., supra, p 643). The validity of the Dairymen’s exemption was recognized as to the defendant co-operative, although it was indicated that in any event no illegal restraint of trade had been shown. As to Borden’s, a non-co-operative, it was stated that the exemption would not apply but notwithstanding this, no illegal activity was present anyway.
In Margrove, Inc. v Upstate Milk Coop. (79 Misc 2d 309, supra), the plaintiff alleged that Upstate Milk Cooperative, Inc., a co-operative, and Wegman’s Food Markets, Inc., a non-co-operative, had entered into an agreement for the purpose of allocating markets and pricing milk and claimed that there was coercion involved. Margrove not only broadened the scope of the activities to which the exemption applied, if Barns (supra) had, in fact, left doubt thereto, it, in addition, then applied the exemption to the non-co-operative since it had entered into a contract with a co-operative.
The court concluded that “The Legislature has not empowered the courts to determine what acts of a co-operative association violate the act and what do not. It has provided that a co-operative association of dairymen may not be prosecuted nor liable for damages under the Donnelly Act” and “There is no language in the act that permits the courts to say that some of the contracts, agreements or *367 arrangements of a co-operative association are exempt from the act and others are not” (Margrove, Inc. v Upstate Milk Coop., supra, p 311).
As to Wegman’s Food Markets, Inc., the court reasoned: “the defendant Wegman’s Food Markets, Inc. is not a cooperative association and it is not exempt from the provisions of the Donnelly Act. But since the only allegation in the complaint against it is that it made contracts and agreements with a co-operative association, and the contracts and agreements of those associations are not illegal under the Donnelly Act, the complaint fails to state a cause of action under the Donnelly Act” (Margrove, Inc. v Upstate Milk Coop., supra, p 316).
Both Barns and Margrove (supra) contain a wealth of history of the dairy industry in the State of New York and Margrove approaches this by delving into the legislative history of the exemption.
A review of this history makes clear that the Legislature has concluded that the dairy industry does not operate effectively in a free market environment. Therefore, the dairy business has not only been permitted to function in a manner that would otherwise be an illegal restraint of trade, it is actually expected to operate in this manner. But the quid pro quo for this exemption is that the industry has become a regulated one, a highly regulated one. The Commissioner of Agriculture and Markets has been empowered to regulate the milk industry in New York State pursuant to article 21 of the Agriculture and Markets Law. More particularly, the commissioner has been given authority regarding the granting and revoking of licenses of milk dealers in this State (Agriculture and Markets Law, § 258-c). The commissioner can, inter alia, suspend or revoke a license “Where the milk dealer has continued in a course of dealing of such a nature as to satisfy the commissioner of his inability or unwillingness properly to conduct the business of receiving or selling milk or to satisfy the commissioner of his intent to deceive or defraud producers or consumers.” (Agriculture and Markets Law, § 258-c, subd [e].)
Subdivision (e) of section 258-c of the Agriculture and Markets Law is worded very broadly and the power to put a *368 milk dealer out of business in New York State is a potent weapon indeed. Section 258-e of the Agriculture and Markets Law permits the commissioner to issue a complaint and bring on an administrative hearing in addition to instituting an action at law or in equity to enforce compliance. The civil penalties under the Donnelly Act are, of course, much more substantial than those permitted under section 258-e of the Agriculture and Markets Law; however, the authority to revoke a milk dealer’s license, as previously noted, is the ultimate sanction.
The plaintiff has conceded that the Margrove case is contrary to its position but argues that it is not a persuasive precedent and should not be followed or, at the least, should be narrowly construed. To simply not follow this case is not an option open to this court. The Margrove case was affirmed by the Appellate Division, Fourth Department, only about eight years ago and the orderly administration of justice requires that this court regard said decision as binding authority. If, as we hope and expect, our citizens conform their behavior to the law, it may well be that milk dealers have relied on this decision in arranging their affairs. It would be for the Appellate Division or the Court of Appeals to modify this decision.
In his brief, the Attorney-General made no attempt to distinguish Margrove (supra) from the instant case but at oral argument it was contended that Margrove involved a vertical restraint whereas we are presently concerned with a horizontal one. Even assuming, arguendo, that the case at bar involves a purely horizontal fact situation, ordinarily questions of vertical versus horizontal restraints arise when a per se theory of antitrust law is being applied which dictates that horizontal restraints are per se violations. The per se approach is contrasted with the rule of reason theory which requires a showing of anticompetitive purpose and effect and other factors regardless of whether the arrangement is vertical or horizontal. A consideration of “vertical” as opposed to “horizontal” restraints need only be undertaken after it has been determined that the antitrust laws are applicable but it has already been concluded that the activities in question are exempt from the Donnelly Act. If the plaintiff is attempting to argue that the *369 exemption itself depends upon whether there is a vertical or horizontal arrangement, there is simply no support for such a position in the statute, the Margrove case or any other case briefed, and it is herein rejected.
This court makes its decision notwithstanding a recent Supreme Court opinion from Bronx County of a contrary view (People v Dairylea Coop., 114 Misc 2d 421). The Dairylea case is a pending criminal antitrust action in which the court has denied defendants’ motions to dismiss the indictment made on the grounds of the exemption. The court (p 425) cites Margrove (supra) as finding the exemption to be “all-pervasive and protective of all parties with whom a dairymen’s cooperative may have dealt”, but disagrees with this position and instead follows People v Wisch (58 Misc 2d 766). The court also relies on the fact that the Commissioner of Agriculture and Markets has not exercised his power under section 258-y of the Agriculture and Markets Law to promulgate regulations regarding sections 258-t, 258-u and 258-v of the Agriculture and Markets Law, which concern various prohibited acts. But the interpretation of the exemption, broad on its face, should not depend on whether the commissioner decides to issue regulations or not, especially when section 258-y of the Agriculture and Markets Law is a “shall” statute, in other words, mandatory. If the commissioner does not issue regulations, then by means of a proceeding pursuant to CPLR article 78 he can be compelled to do so. A ruling that the Attorney-General can maintain actions such as these only tends to insure that the commissioner will never on his own issue the regulations. In any event, as stated above, this court is not free to disregard Margrove.
The complaint alleges a single agreement among all of the defendants; there are no allegations of any agreement between only non-co-operative defendants. Therefore, under the Margrove doctrine, the non-co-operative defendants, as well as the co-operative defendants, are exempt from the Donnelly Act. The complaint must be dismissed as it has failed to state a cause of action as to each defendant.
The Agriculture and Markets Law contains a comprehensive scheme of regulation of the milk industry and *370 provides appropriate enforcement tools therein. If the plaintiff believes that application of the antitrust laws is also required in this area, it is a matter to be argued before the Legislature.
The farmers, besides directing their complaints to the Commissioner of Agriculture and Markets, can still, of course, pursue their own private remedies, if they choose, by action for breach of contract or tort action for inducement of breach of contract or under any other theory they feel appropriate.
As the action is being dismissed, the pending motions for protective orders and a preliminary injunction and the existing temporary restraining order all die with it. However, should the plaintiff decide to appeal, he can, of course, preserve the status quo pursuant to CPLR 5518 or 5519.
One matter remains for consideration. The Attorney-General has served a subpoena on an employee of defendant, Queensboro Farm Products, Inc. (Queensboro), a non-co-operative defendant. This subpoena was issued under section 343 of the General Business Law after the commencement of this action and Queensboro then moved to quash on the ground that the subpoena circumvented the discovery provisions of the CPLR. This argument for vacating the subpoena dissolves with the dismissal of this action and the Attorney-General is certainly entitled to continue his investigation of non-co-operatives and co-operatives. It may be that he will be seeking to find evidence showing an agreement between only non-co-operatives. The motion to quash is hereby denied.
The complaint is dismissed.