■ STATE OF NEW YORK, Appellant-Respondent, v GLEN & MOHAWK MILK ASSOCIATION, INC., et al., Respondents, and QUEENSBORO FARM PRODUCTS, INC., et al., Respondents-Appellants. — Order and judgment affirmed, without costs, for reasons stated at Special Term, Reagan, J. Memorandum: We add only that the language of subdivision 3 of section 340 of the General Business Law does not permit the interpretation advanced by the dissent. That subdivision unambiguously states that "the provisions of this article [the Donnelly Act] *shall not apply* to cooperative associations * * * of * * * dairymen" (emphasis supplied). The Court of Appeals has recently reminded us that the court "should not ignore the words of a statute, clear on its face, to reach a different result through judicial interpretation (McKinney's Cons Laws of NY, Book 1, Statutes, § 76)." (*Matter of Kleefeld*, 55 NY2d 253, 259.) Concur — Dillon, P. J., Boomer and Moule, JJ.

Doerr and Schnepp, JJ., dissent and vote to reverse the order and judgment and deny the motion in the following memorandum by Schnepp, J., in which Doerr, J., concurs: The antitrust law exemption contained in subdivision 3 of section 340 of the General Business Law (Donnelly Act) applies to contracts, agreements and arrangements made by dairy co-operative associations with others (see *Margrove Inc. v Upstate Milk Coop.*, 79 Misc 2d 309, affd on opn below *sub nom. Margrove Inc. v Wegman's Food Markets*, 49 AD2d 669), but we would hold that all business practices of dairy co-operatives are not thereby immunized from the proscriptions of this law. The legislative history of the exemption makes it abundantly clear that the Legislature intended to remove the ban of the Donnelly Act insofar as it impinged on the business activities of

dairy co-operatives while engaged in the collective sale and marketing of dairy products. The exemption and companion legislation were enacted in 1918 following the 1917 report of a joint legislative committee created to investigate the distribution of dairy products in the wake of the New York City milk crisis of 1916 which developed because of the reluctance of milk dealers to enter into collective sales contracts with the Dairymen's League for fear of running afoul of the Donnelly Act (see *Margrove Inc. v Upstate Milk Coop., supra*). The Legislature authorized the formation of co-operative dairy associations as membership organizations for mutual help, to act as agents for its members and to perform services connected with the production, marketing and sale of dairy products (L 1918, ch 655, eff May 13, 1918). It also exempted such associations and their "contracts, agreements or arrangements" from the Donnelly Act (L 1918, ch 491, eff May 6, 1918) and from the conspiracy provisions of the Penal Law (L 1918, ch 491, eff May 6, 1918). The Penal Law immunity applied, however, only to the activities of co-operatives "engaged in making collective sales or marketing for its members" and to the "[c]ontracts, agreements, arrangements or combinations * * * made by such associations * * * in making such collective sales and marketing and prescribing the terms and conditions thereof". It thus appears that the legislative plan in enacting this legislation was to permit the formation of dairy co-operatives as a mechanism to conduct the collective selling and marketing of dairy products and to legitimatize their operation without the restraints of the Donnelly Act and the prohibitions of the conspiracy provisions of the Penal Law. A legislative purpose in enacting the Donnelly Act exemption was ostensibly to insure a steady supply of milk by permitting dairy co-operatives to sell pooled milk at fixed prices and on fixed terms without fear of unreasonably restraining trade or of creating a monopoly in violation of the Donnelly Act, thus allowing desirable co-operation through which beneficial economies could be secured. Among other ends, this legislation was designed to permit dairy farmers to obtain a reasonable price for their product. It was not intended, however, to provide blanket immunity for all monopolistic and anticompetitive practices of these co-operatives. This interpretation is buttressed by a reading of the Donnelly Act exemption in conjunction with the Penal Law amendment. Since these statutes relate to the same subject matter they are said to be *in pari materia* and should be applied harmoniously and consistently (see *Baldine v Gomulka,* 61 AD2d 419, 422; McKinney's Cons Laws of NY, Book 1, Statutes, § 221). This rule applies with particular force here since both statutes were passed at the same session of the Legislature, and were signed into law and became effective on the same date (see *City Bank Farmers Trust Co. v Ardlea Incorporation,* 267 NY 224). Construing these statutes together, the conclusion is inescapable that the intent of the Legislature was to permit the fixing of prices, the creation of monopolies and the restraint of competition by dairy co-operatives within the bounds of business activity related to the collective sale and marketing of dairy products. The Legislature did not intend to give dairy co-operatives unrestricted power to act for their own interests and on their own behalf without concern for the rights of dairy farmers to conduct business free from restraint or domination. Here, the State of New York alleges that the defendant milk dealers engaged in an unlawful conspiracy to refuse to buy milk from approximately 748 farmers after the farmers refused to join defendant Northeast Dairy Cooperative Federation, Inc. (NEDCO), and charges that by this conduct NEDCO and the other defendants attempted to force these farmers to sell their milk only to NEDCO. There is no claim by the State that defendants are parties to a combination to fix prices. The claim here reflects the alleged existence of an arrangement between competing outlets for the raw

milk of certain farmers which deprives these farmers of a market for their product unless they submit to defendants' coercion. The alleged arrangement has nothing to do with either the formation of co-operative associations by dairy farmers or the collective sale and marketing of pooled milk at fixed prices and on fixed terms. The application of the Donnelly Act exemption to this case, in our view, clearly contravenes the legislative intent and leads to an unreasonable result. Under these circumstances, by examining the legislative history and context to determine the exact meaning and scope of the exemption, we do not ignore the words of the statute, as the majority seems to suggest, but merely give to the words the narrow meaning the Legislature intended (see *New York State Bankers Assn. v Albright,* 38 NY2d 430, 434; *Le Drugstore Etats Unis v New York State Bd. of Pharmacy,* 33 NY2d 298, 302). Indeed, the majority also examined the legislative history in arriving at its broad interpretation of the exemption language (see *Margrove Inc. v Upstate Milk Coop., supra*). The literal reading of the language of the exemption, proposed by the majority, frustrates the purpose of the statute (see *Uniformed Firefighters Assn., Local 94, IAAF, AFL-CIO v Beekman,* 52 NY2d 463, 471) and we would hold that the Donnelly Act exemption has no application and that Special Term erred in dismissing the complaint for failure to state a cause of action. (Appeals from order and judgment of Supreme Court, Onondaga County, Reagan, J. — dismiss complaint.) Present — Dillon, P. J., Doerr, Boomer, Moule and Schnepp, JJ. [114 Misc 2d 363.]