Arthur A. Johnson Corporation et al., Plaintiffs, *v.* Indemnity Insurance Company of North America, Defendant.

First Department, June 24, 1958.

*Franklin Nevius* of counsel (*Thomas B. Treacy* with him on the brief; *Nevius, Jarvis & Pilz,* attorneys), for plaintiffs.

*George A. Garvey* of counsel (*Garvey & Conway,* attorneys), for defendants.

BOTEIN, P. J. A problem of first impression in this State is presented by a controversy submitted under sections 546–548 of the Civil Practice Act. The question posed is whether, under an insurance policy assigning a fixed limit on coverage for " each accident ", a closely related series of events is properly viewed as a single accident, with consequent liability limitation, or as several accidents, with each accident a further multiple of liability. The agreed facts are as follows:

Plaintiffs, as contractors, were engaged in extending the platforms of the 23rd Street subway stations on the Lexington–Fourth Avenue Line of the I. R. T. Division, pursuant to a contract between them and the City of New York. By the terms of the contract plaintiffs had agreed to assume all liability to the owners, tenants and occupants of adjacent, abutting and overhead structures for physical injury and property damage caused by the work of construction, whether attributable to negligence of the contractor or his employees or otherwise. The liability of the contractors was expressly declared to be absolute and not dependent upon any question of negligence.

To protect themselves from the liabilities thus assumed, plaintiffs obtained from defendant insurance company a conventional comprehensive general liability policy to indemnify them for all sums they would become obligated to pay for liability imposed by law. For an additional premium a further endorsement was attached, under which defendant agreed to indemnify plaintiffs for all liability which they assumed under the contract. The policy specified that the limits of liability for property damage were " $50,000 each accident; $100,000 aggregate operations "; and the extent of defendant's liability under this clause is the subject matter of the submitted controversy.

In carrying out the work on the subway platform extensions, plaintiffs dug a continuous trench to subbasement depth along the west side of Fourth Avenue between 22nd and 23rd Streets parallel and immediately adjacent to the building line. Two buildings occupied this block front — 300 Fourth Avenue from the 22nd Street corner northward, and 304 Fourth Avenue from the 23rd Street corner southward. These buildings, though adjoining, were entirely separate in every respect.

In digging the trenches, plaintiffs had to remove the vaults under the sidewalk in front of each of the buildings. Plaintiffs constructed a temporary cinder block wall six inches thick at the subbasement level in six sections, to close off the front of 300 Fourth Avenue between its lower foundation piers. Another such wall, entirely separate, was constructed at the subbasement level in front of 304 Fourth Avenue.

After the trench had been dug and the temporary basement walls constructed, New York City experienced a rainfall of record intensity. The sewers overflowed and the trench filled with water. The water exerted considerable pressure against the temporary cinder block walls, and at 5:10 P.M. of the day in question one of the six sections in front of 300 Fourth Avenue collapsed. Water flowed into the subbasement, causing considerable damage to the building and to the property of the owner and of tenants. At 6:00 P.M., fifty minutes later, the wall in front of 304 Fourth Avenue also collapsed and water flowed into the subbasement of that building.

The owners and tenants of the two buildings made claims against plaintiffs for damage to their property. Defendant refused to indemnify plaintiffs for amounts paid in settlement of such claims in excess of $50,000, contending that there had been only one accident, and relying on the policy limitation of "$50,000 each accident". Plaintiffs, asserting that there were two separate accidents, sue for an additional $19,939, within the overall policy limitation of "$100,000 aggregate operations".

In seeking to ascertain the scope to be given words or phrases not explicitly defined in an insurance policy, we usually ascribe to them the ordinary and popular meaning, importing the construction that would be given them by the average assured when he purchased the policy (*Abrams* v. *Great Amer. Ins. Co.*, 269 N. Y. 90; *Johnson* v. *Travelers Ins. Co.*, 269 N. Y. 401, 408). When a substantial uniformity of opinion on a question of interpretation may be expected, resort to such popular standards is quite appropriate. However, when as in this case, the popular concept cannot be determined with comfortable assurance, other or at least supporting guides to construction must be explored to resolve the question.

When uncertainity and doubt arise from policy language susceptible of more than one meaning, we may adopt the oft-quoted but seldom decisive formula of resolving all ambiguity against the insurer (*Hartol Prods. Corp.* v. *Prudential Ins. Co.*, 290 N. Y. 44). However, reliance on this standard makeweight does not

furnish a ready solution to the controversy, since the difficulties stem not so much from doubt as to the meaning of policy language as from uncertainty as to the manner in which the contracting parties intended such language to be applied to an unusual factual situation.

An accident, according to generally accepted definitions, is a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact (*Lewis* v. *Ocean Acc. & Guar. Corp.*, 224 N. Y. 18, 21; *Matter of Woodruff* v. *Howes Constr. Co.*, 228 N. Y. 276, 278; *Meyer* v. *New York Life Ins. Co.*, 249 App. Div. 243, 245; *Berkowitz* v. *New York Life Ins. Co.*, 256 App. Div. 324; 1 C. J. S., Accident, p. 427). There is no doubt that there was an accident in this case; the question is whether there was more than one. The particular manner in which such general definitions are to be applied must be determined by the context in which the words are used, for the aspect of events often varies with the point of view, and takes on color from its surroundings. Just as an act, deliberate from the point of view of its initiator, may be considered an accident if seen through the eyes of its victim (*Smith* v. *Continental Cas. Co.*, 259 App. Div. 357; *Floralbell Amusement Corp.* v. *Standard Sur. & Cas. Co.*, 256 App. Div. 221), so choice of the proper vantage point enables us to view in better perspective the entire complex of consequences to decide whether there was one continuous event or several successive ones.

There are few cases which deal directly with this question. They are interesting in the variety of their approaches, but are not dispositive of the issue presented here.

In New York, where the courts have heretofore touched upon related situations only tangentially, the attempt has been made to measure the coverage for each accident by the number of assureds involved (cf. *American Employers Ins. Co.* v. *Goble Aircraft Specialties, Inc.*, 205 Misc. 1066, appeal withdrawn 1 A D 2d 1008; *Loerzel* v. *American Fidelity Fire Ins. Co.*, 204 Misc. 115, affd. 281 App. Div. 735). The results in these cases, however, were governed by the specific policy language peculiar to each case. There are cases in other jurisdictions which hold that a separate accident has been sustained by each person injured, and which thus multiply the limits of liability per accident by the number of claimants involved (*South Staffordshire Tramways Co.* v. *Sickness & Acc. Assur. Assn.* [1891], 1 Q. B. 402; *Anchor Cas. Co.* v. *McCaleb*, 178 F. 2d 322).

Defining accident from the point of view of the person affected, Judge CARDOZO has said, "Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the

results rather than the quality of the causes " (*Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161, 165). While cause was thus rejected and the emphasis put upon effect as a determinant in distinguishing between the accidental and the purposive, a number of cases have applied the test of common or separate cause to determine the unity or discreteness of accidental events (*Hyer* v. *Inter-Insurance Exch.* 77 Cal. App. 343; *Denham* v. *La Salle-Madison Hotel Co.*, 168 F. 2d 576, cert. denied 335 U. S. 871; *St. Paul-Mercury Ind. Co.* v. *Rutland*, 225 F. 2d 689; *Tri-State Roofing Co.* v. *New Amsterdam Cas. Co.*, 139 F. Supp. 193; *Truck Ins. Exch.* v. *Rohde*, 49 Wn. [2d] 465).

In these cases the pitfalls of measuring accidents in terms of ultimate effect were carefully noted and avoided. Thus, it was observed that where there is a specified limitation of coverage per person and a higher overall coverage limitation per accident, the parties to the insurance contract necessarily contemplate that damage could be suffered by more than one person in a single accident. Similarly, where the policy makes reference to " claims " arising from an accident, it is anticipated that the persons or property of more than one individual might be involved in a single accident under the policy, and there is a clear indication that accident and its effect are to be differentiated.

Where there is no limitation of aggregate liability, the measure of accident in terms of effect would create unlimited coverage, depending on the number of claimants. Certainly it would be absurd to hold that if by a single act an assured damaged 16 parcels belonging to 16 owners there would result 16 separate accidents, but that if all 16 parcels happened to be owned by a single owner there would be only one accident. The fallacy lies in attempting to construe terms in a contract between insurer and assured from the point of view of third persons who are complete strangers to the contract.

The empiric test which would determine the separability of events by disparity in time and space (see Annotation 55 A. L. R. 2d 1300, 1304; cf. *Kuhn's of Brownsville* v. *Bituminous Cas. Co.*, 197 Tenn. 60) does not satisfactorily account for situations in which there are simultaneous separate accidents, or single accidents the consequences of which are separated in time and space. Acts which are not joint in fact or united in cause may be as widely separated in law by the lapse of moments as by the lapse of hours or days (*Young* v. *Dille*, 127 Wash. 398).

Care must be taken to distinguish between the incident and its consequences. A single accident may have effects which are separated widely in space and time. The accident is generally

understood to be sudden in time, an event of readily identifiable period and place, a finite occurrence with a definable beginning and end, rather than a series of progressive and protracted changes scarcely perceptible from one moment to the next. It is an event and not a condition (*Jackson* v. *Employers' Liability Assur. Corp.*, 139 Misc. 686, affd. 234 App. Div. 893, affd. 259 N. Y. 559; *Jeffreyes* v. *Sager Co.*, 198 App. Div. 446, affd. 233 N. Y. 535). An explosion may occur, causing the walls of a nearby building to collapse immediately. Yet that same explosion may have weakened the walls of another building some distance away to such an extent that it collapses on the following day. Under such circumstances there has been one accident, assignable to a single determinate act limited in time and space, although the ensuing consequences may be gradual in their effect and widely separated from the initial event (*Lagowitz* v. *United States Fidelity & Guar. Co.*, 281 N. Y. 876, 878; *Berger Bros. Elec. Motors* v. *New Amsterdam Cas. Co.*, 267 App. Div. 333). Time and space may be symptomatic indications of single or separate accidents, but they cannot be taken as determinative in and of themselves.

It does not follow, however, that if we reject effect or the test of disparity in time and space as the measure of accident, an aggregate of events must be considered as a single accident whenever there are causal elements common to all. A single cause may trigger several events, a plurality of causes may unite to cause a single event, and any given event may have multiple effects. We need not indulge in endless speculation about the relative roles of direct, remote and proximate causation, for we are construing a contract, not attempting to apportion responsibility in accordance with the tenets of tort law. " There are times when the law permits us to go far back in tracing events to causes. The inquiry for us is how far the parties to this contract *intended* us to go. The causes within their contemplation are the only causes that concern us. * * * The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant." (*Bird* v. *St. Paul Fire & Mar. Ins. Co.*, 224 N. Y. 47, 51.) From the point of view of the parties to the insurance contract, which is the only point of view relevant here, the only causes with which we need be concerned are those covered by the policy. Where a hazard insured against is a contributing cause of damage, liability under the policy ensues (*Tonkin* v. *California Ins. Co.*, 294 N. Y. 326).

What is the event of liability here, the operative hazard which brings the policy into play? In a liability policy the operative hazard is usually a negligent act of the assured. For liability to arise, under tort law, the negligence must be the proximate cause of the damage. Hence, under such policies proximate cause coincides with the hazard insured against, and courts dealing with such policies are wont to shape their discussions in terms of proximate cause. In other policies, however, the operative hazard may be fire, collision, smoke, water, wind, or other enumerated events. The risk attaches when the covered hazard creates the potential for damage. Liability accrues upon impact. Once the operative hazard occurs the event to which the liability limitation applies has taken place. If it continues uninterrupted to impact, the initial coverage stands, no matter how unfortunate or widespread the eventual consequences, unless or until some other or further event also covered by the policy has occurred.

There would seem to be an ellipsis in the policy language — words unexpressed but necessarily implied — for in reality the liability limitation is applicable to " each [covered act or event resulting in] accident ". The insurance coverage depends not on the single or plural nature of either cause or effect but on the intrinsic nature of the covered event or events. Thus, in the *Hyer* and *Rohde* cases (*supra*), a single negligent act by the assured caused his car to crash into an oncoming vehicle and then, out of control, to continue on until it collided with another vehicle shortly thereafter. Under the conventional policy insuring against liability for negligence, there would be only one accident, regardless of the number of cars of persons involved. However, under a policy in which collision, irrespective of negligence, is the hazard insured against, absent specific restrictive language, the number of accidents would be measured by the number of separate impacts, even though there may be a single underlying and unifying cause.

In the policy involved in this case, the hazard insured against is not flood, an underlying cause of all the damage, but acts done by the assured in the course of construction work causing injury, with or without negligence. So long as there is an act of the assured which contributes in some degree to harm the property of others, there is liability under the policy without regard to whether such act was *the* direct and proximate cause for which the assured could be held responsible in tort.

We are here presented with a situation in which several causes combined to produce separable events. Each of these causes was the *sine qua non* without which the damage never

would have occurred. The contributing causes were the digging of the trench from 22nd Street to 23rd Street; the opening of the basement vaults of each of the two buildings; the construction of temporary walls to block off the open basements of each building; the heavy rainstorm; the overflow of the sewers; the filling of the trench with water; and the collapse of the two walls. The action of the elements — the storm and the flooding — gave rise to no liability under the policy. Only the digging of the trench, the opening of the vaults and the construction of the temporary walls were acts of the plaintiffs for which there might be responsibility under the policy. Which of these acts were the operative events which resulted in damage? It was not the digging of the trench, for even when the rainstorm and the sewer overflow caused the trench to fill there was no damage.

The risk was incurred initially when plaintiffs, by opening the vaults of each building, altered the original construction and subjected the basements to exposure. The damage occurred only when the two temporary walls constructed by plaintiffs to protect each of the basements proved unable to withstand the pressures of the elements and collapsed, allowing the water to reach the goods in each subbasement with disastrous consequences. Not only were there two separate collapses of walls, resulting in damage to two separate buildings; but the previous actions of the plaintiffs in laying open the vaults of each building and erecting temporary but inadequate walls for each, were distinct and separate acts as to each building which gave rise to separate liabilities. The coincidence that the buildings were adjacent to one another was of no import. Plaintiff undertook separately to take steps for the protection of each building and constructed separate walls at separate times for each. These distinct duties which plaintiff attempted to meet by separate acts of construction created severable liabilities as to each building, once natural forces worked on the weakened barriers to cause damage. Under this view of the facts it would make no difference if the separate walls had collapsed simultaneously or fifty minutes apart, for there were two accidents just as surely as if a single rainstorm had caused the collapse of temporary walls in buildings several blocks apart.

A different result would ensue if a single blow of a pickaxe by one of plaintiff's workmen had destroyed a water main, resulting in the inundation of the lobbies of both buildings with consequent damage. In such a case there would have been but one accident and one operation under the policy, despite the fact that separate buildings were involved and that the water may not have damaged the property in each of the buildings simultaneously.

Conversely, in the submitted situation the impact upon each building was a separate and single accident, even though several distinct and divisible operations of plaintiffs relating to each building combined to bring about that result. In construing the liability limitations of an insurance policy the number of accidents may be expressed as the number of operative events covered under the policy, which give rise to a series of damaging impacts, either simultaneous or causally connected. If, as here, the acts of the assured are divisible and each results in a separate impact, there is more than one accident.

Consequently, we find in this case that on August 26, 1947 there was more than one accident and that therefore the liability limitation of $50,000 is not here applicable. There must be judgment for the plaintiffs in the sum of $19,939, with interest from December 10, 1948, without costs.

RABIN, VALENTE, STEVENS and BERGAN, JJ., concur.

Judgment unanimously directed in favor of plaintiffs in the sum of $19,939, with interest from December 10, 1948, without costs.

Settle judgment.