■ In the Matter of JEROME SCHUSSLER, Respondent, v MICHAEL J. CODD, as ex-Police Commissioner of the City of New York and as Past Executive Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Appellants. — Judgment, Supreme Court, New York County (Okin, J.), dated September 17, 1981 vacating respondents' (essentially the New York City Police Pension Fund, Article II) determination denying petitioner service-connected accident disability retirement and directing that petitioner be granted such service-connected accident disability retirement, is unanimously reversed, without costs, on the law, and the petition is dismissed. The petitioner had the burden of proving that his loss of hearing was caused by a line-of-duty "accident". (*Matter of Drayson v Board of Trustees of Police Pension Fund of City of N. Y., Art. 2*, 37 AD2d 378, 380, affd 32 NY2d 852.) The evidence adduced before the medical board and the board of trustees indicated that the petitioner had never complained of a hearing loss prior to the submission of his application for accidental disability retirement. The proof also showed that he might have sustained his hearing loss while exposed to combat during World War II. Moreover, it was possible to conclude from the evidence that petitioner did not sustain a loss of hearing during mandatory practice sessions on the pistol range. For 10 years he had voluntarily participated as a member of the police department's fifth division pistol team. Upon

this state of the evidence, the petitioner did not carry his burden of proof to establish causation. Hence, the board of trustees did not act arbitrarily or capriciously in rejecting his application for accidental disability retirement. For this limited reason, we would reverse and dismiss the petition. We find it unnecessary to reach the additional question as to whether *Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N. Y., Art. II* (57 NY2d 1010) is controlling upon the facts in this case. Concur — Murphy, P. J., Fein and Kassal, JJ. Ross and Silverman, JJ., concur in separate memoranda as follows:

Ross, J. (concurring). Petitioner, a sergeant in the New York City Police Department (Department), with 31 years of service, applied for a service-connected accidental disability retirement, pursuant to section B18-43.0 of the Administrative Code of the City of New York.[1] The basis for his claim was that during the course of his performance of duty he lost his hearing, and this resulted from continuous exposure to the noise of the police firing range. In 1946, at age 24, the petitioner was appointed a police officer. Prior to appointment, the Department tested his hearing and found it to be acceptable for regular duty. This court will take judicial notice of the fact that ever since New York City police officers have been armed, the Department has been committed to the objective that these officers attain the highest skill possible in the use of their service revolvers. Accordingly, the Department encouraged officer interest in firearms training. Among other things, the Department awarded two days off every four months to an officer who qualified as an "expert marksman". Additionally, the Department sponsored pistol teams. In the early 1950's, petitioner was detailed to the Department's fifth division pistol team. For a decade he served on the team, first as a member and then as a supervisor. Besides practicing alone at the Department's indoor firing ranges, he also participated in the team's three weekly practice sessions that took place on these ranges. Every one of the 8 to 10 team members was *required* to fire at least 50 rounds of .38 calibre ammunition at each session. In addition, petitioner competed in departmental shooting matches. None of these indoor police ranges was soundproofed or had any other type of sound-deadening material on the walls or ceilings to muffle the explosions. Throughout this period of time, the Department did not provide its officers, including team members, with any type of personal protective equipment for their ears, even though an investigation conducted by the Department made it aware that its officers' hearing was being imperiled by shooting on these indoor ranges. For example, in 1968, the Federal Bureau of Investigation had advised the Department that: "Numerous conferences have been held with Naval Hospital doctors

1. "§ B18-43.0. Retirement; for accident disability — Medical examination of a member in city-service for accident disability and investigation of all statements and certificates by him or on his behalf in connection therewith shall be made upon the application of the commissioner, or upon the application of a member or of a person acting in his behalf, stating that such member is physically or mentally incapacitated for the performance of city-service, as a natural and proximate result of such city-service, and certifying the time, place and conditions of such city-service performed by such member resulting in such alleged disability and that such alleged disability was not the result of wilful negligence on the part of such member and that such member should, therefore, be retired. If such medical examination and investigation shows that such member is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member and that such member should be retired, the medical board shall so certify to the board, stating the time, place and conditions of such city-service performed by such member resulting in such disability, and such board shall retire such member for accident disability forthwith. (As added by L.L. 1940, No. 2, March 29.)"

and hearing specialists regarding ear protection in connection with our firearms training program and following their recommendations our Agents receiving firearms training are required to use cotton impregnated with vaseline while on the range. Our instructors, who are exposed to the noise of firearms training for an extended period are issued earmuffs." In 1968 the Department ordered all police officers using firing ranges to utilize ear protectors. Unfortunately, by the time the Department took this action, petitioner's hearing had already been permanently impaired. Over the last several years of petitioner's service he experienced a continual ringing in his left ear and he managed to perform his duty in large part only by lip reading. In January, 1977 petitioner applied for service-connected accident disability retirement. His application was principally based upon his hearing loss. It is undisputed that, while an active member of the Department, he never reported a line-of-duty injury due to the noise of the range firing. After considering the evidence, the Medical Board of the Police Pension Fund Article II (Medical Board) unanimously found in their May, 1977 report concerning petitioner, that: "A review of a recent audiogram done [of the petitioner] by Manhattan Eye and Ear Hospital revealed a significant hearing loss of both ears specially [*sic*] high pitch sounds." However, despite this finding, in the same report the Medical Board recommended to the Board of Trustees of the Police Pension Fund (Trustees) that petitioner be denied accidental disability retirement solely due to the fact that: "[T]his officer has not before his present application made any report of line of duty injury to his ears." Thereafter, in July, 1977 the Trustees deadlocked 6 to 6 over petitioner's application; and this deadlock had the legal effect of denying the application (*Matter of City of New York v Schoeck,* 294 NY 559). In response to this denial by the Trustees, petitioner initiated his first CPLR article 78 proceeding. It challenged the Trustees' determination on the ground that they had not made an adequate investigation of causation and that the Medical Board's recommendation lacked a rational basis. Special Term granted the petition to the extent of remanding this matter to the Trustees, with the direction that they conduct an independent investigation to find the cause of petitioner's disability. Justice Ascione wrote in support of his decision (*Matter of Schussler [Codd],* NYLJ, April 21, 1978, p 5, col 2) that: "[A] review of the record herein establishes that respondents' [Trustees'] determination as to causation was not based upon credible evidence * * * The sole justification for respondent Medical Board's determination is petitioner's failure to complain to police officials prior to his disability retirement application. Such a finding punishes malingerers and nonmalingerers alike equally and unfairly. This court will take judicial notice that a disability such as petitioner's may be the result of the cumulative effect of repeated exposure to loud noise and that there may be no specific accident as such". On reconsideration the Medical Board in essence adhered to its original recommendation to deny the application. In their report to the Trustees, dated July 24, 1979, the Medical Board stated that it: "has reviewed this file in great detail, and it is felt that there is no relation to any specific incident or event". On September 29, 1980 the Trustees reconsidered the petitioner's matter at an executive session at which minutes were taken. In the course of this meeting Dr. Clarence Robinson (Robinson), the supervising chief surgeon of the Department commented that: "Looking at the case of Schussler, the point was made for the Board that he did not report an injury. I would consider it rather unusual if an officer who has been exposed to shooting at the range were to report any injury. This just does not happen. We know that * * * he was apparently assigned to range duty in the years during which there was no adequate protection. I believe this is the one [petitioner] on whom there was an

Honorary's [honorary police surgeon's] report ascribing his hearing loss to acoustic trauma such as would occur at the range. And I do not find anything inconsistent or unjustified in ascribing his hearing loss to that sort of thing. I think that * * * [it] is reasonable to ascribe his hearing condition to that type of acoustic problem." Later in this same meeting, the following discussion took place between the board chairman and Dr. Robinson: "COMMISSIONER CONBOY: Would it be fair to say that on the basis of your review of the record, were you a member of the Medical Board reviewing these cases, you would find not only disability but causation and recommend a three-quarter disability pension? DR. ROBINSON: That is true." Before taking a vote, the chairman admitted on behalf of the Department that: "I think all of the Trustees, even I suspect, even all the City Trustees would agree that there is a disability and that the disability is in a broad sense attributable to the discharge of police service." In spite of Dr. Robinson's concession and the admission of the Trustees' chairman, the Trustees once again did not approve petitioner's application because they deadlocked (6 to 6) in their vote. Petitioner challenged this most recent denial by filing his second article 78 petition, which is the basis of the proceeding now on appeal before this court. Special Term granted the petition and remanded the matter to the Trustees with the direction that they award a service-connected accident disability retirement to petitioner. Justice Okin set forth these reasons for his decision (*Matter of Schussler* [*Codd*], NYLJ, Aug. 27, 1981, p 6, cols 2, 3): "After remand there was no independent investigation as had been directed * * * Nothing new was added to the record. The Medical Board makes an oblique reference to petitioner's military service[2] and tries to imply that petitioner might have been subjected to bombing and strafing that could have affected his hearing. The facts do not support respondents' implications, and the Court finds to the contrary. This record requires the finding that petitioner's military service did not adversely affect his hearing * * * [P]etitioner was not required to show a particular accident on a particular day in a particular place. Rather, the hearing impairment was established by this record to be the result of petitioner's participation in pistol target practice over a period of many years * * * [T]he facts established that petitioner's disability — a hearing impairment — was job related * * * Respondents' actions in this matter, and their conclusion, are arbitrary, capricious and unreasonable". The writer wishes that he could agree with Special Term's conclusion that petitioner's disability qualifies him for an accidental disability retirement. If it was within the writer's power, I would affirm. However, as a matter of law, Special Term must be reversed despite the fact that high officials of the Department, like Dr. Robinson, acknowledge that Department inaction led to petitioner's becoming disabled. The Court of Appeals recently decided in *Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N. Y., Art. II* (57 NY2d 1010) that the plain meaning of section B18-43.0 of the Administrative Code only permits an accidental disability retirement to be approved for an officer who suffers a disability as a result of an unexpected event, and that an officer who incurs a disability as a result of the performance of ordinary employment duties is not eligible to receive this kind of retirement. The officer involved in the *Lichtenstein* case had suffered a back injury while leaning over the hood of an automobile in order to place a summons on the vehicle. In the *Lichtenstein* case the Court of Appeals traces the legislative history of section B18-43.0 and states (p 1012): "The express requirement that the employee establish that the line-of-duty injury be incurred as the result of an accident was added in 1940 (see *Uniform Fire-Fighters Assn., Local 94, IAFF, AFL-CIO v Beekman*, 52 NY2d 463). Prior to that time, line-of-duty

2. During World War II petitioner served as a clerk-typist in the United States Army Finance Department and seldom, if ever, heard a weapon fired.

retirement benefits were payable solely upon a determination that the disability was employment related (L 1920, ch 427, § 1, Administrative Code, §§ B18-4.0, B19-4.0)." Of course, based upon its interpretation of this section, as amended in 1940, the Court of Appeals was constrained to rule as it did. The harshness of the effect of the present section, which allows no accidental disability retirement for job-related disability is illustrated by the petitioner's case. However, his case is not unique (see *Manzolillo v New York City Employees' Retirement System,* 87 AD2d 791; *Matter of Rinaldi v Board of Trustees of N.Y. City Employees' Retirement System,* 88 AD2d 870). This writer feels that the disability suffered by petitioner is totally attributable to his official duties as a police officer. He sustained his disability as a result of his work, and the laxity of the Police Department in failing to take appropriate precautions to protect him. However, the law in this State is clear. Although petitioner's injury is job related, it did not result from a job-related accident. The Court of Appeals in *Lichtenstein (supra,* p 1012), held, "Although the term 'accident' is not specifically defined by the statute [§ B18-43.0], we adopt the commonsense definition of a 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' *(Johnson Corp. v Indemnity Ins. Co. of North Amer.,* 6 AD2d 97, 100, affd 7 NY2d 222). (According to this definition, an injury which occurs without an unexpected event as the result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury within the meaning of section B18-43.0) (see, e.g., Retirement and Social Security Law, § 363; *Matter of Covel v New York State Employees' Retirement System,* 84 AD2d 902, mot for lv to app den 55 NY2d 606; *Matter of Panek v Regan,* 81 AD2d 738)." Based upon the Court of Appeals definition of the word "accident", and since the petitioner's injury occurred "without an unexpected event" it cannot be deemed an "accidental injury within the meaning of section B18-43.0". The only available remedy for petitioners in similar circumstances lies with the State Legislature. Accordingly, the judgment, Supreme Court (Okin, J.), at Special Term, New York County, entered on September 17, 1981, which granted petitioner's application pursuant to CPLR article 78, and directed the Board of Trustees of the Police Pension Fund of the City of New York, Article II, to grant petitioner a service-connected accident disability, is reversed, on the law and the facts, without costs, the petition is dismissed, and the Board of Trustees' determination denying the application is confirmed.

Silverman, J. (concurring). Petitioner's disability was not the result of an "accidental injury" as required by section B18-43.0 of the Administrative Code of the City of New York (*Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II,* 57 NY2d 1010).