■ In the Matter of RICHARD KNIGHT, Appellant, v ROBERT J. McGUIRE, as Police Commissioner of the City of New York and as Executive Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents. — Judgment, Supreme Court, New York County (Maresca, J.), entered January 20, 1982, denying petitioner's application for vacatur of a determination of respondents-respondents denying petitioner's application for accidental disability retirement, and retiring him on ordinary disability, affirmed, without costs. The injury sustained by petitioner did not arise out of a " 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' " (*Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N. Y., Art. II,* 57 NY2d 1010, 1012, quoting *Johnson Corp. v Indemnity Ins. Co. of North Amer.,* 6 AD2d 97, 100). As that case holds, an injury which occurs without an unexpected event as a result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury within the meaning of section B18-43.0 of the Administrative Code of the City of New York. Slipping on a wet curb on a rainy day is not an accidental injury within this definition. Injuries sustained during the performance of an employee's regular duties resulting from risks inherent in the task being performed are not accidents within the ambit of the Administrative Code (*Matter of Covel v New York State Employees' Retirement System,* 84 AD2d 902, mot for lv to app den 55 NY2d 606; *Matter of Menna v New York City Employees' Retirement System,* 91 AD2d 537). A wet pavement is no different than a slippery floor in terms of whether there was an accident within the meaning of the statute. The fact that the floor became slippery in the course of Covel's employment was not dispositive in his case (*Matter of Covel v New York State Employees' Retirement System, supra*). As *Lichtenstein* (*supra,* pp 1011-1012) notes, "not every line-of-duty injury will support an award of accidental disability retirement." Concur — Sandler, J. P., Ross and Fein, JJ. Asch and Kassal, JJ., each dissent in a separate memorandum as follows:

Asch, J. (dissenting). In my opinion, the judgment appealed from should be reversed. Appellant was on duty at Boulevard Hospital in Queens when a radio motor patrol car arrived to relieve him. At that time it was raining heavily, and as the appellant was about to get into the automobile, he lost his footing on the wet sidewalk. His leg slipped under the car. He fell backwards injuring his left elbow on the pavement. The line-of-duty injury report filed in connection with the accident stated in part: "Investigation reveals that due to rain condition the curb and sidewalk was wet and as PO Richard Knight opened the door of RMP 2165 he slipped on wet curb and fell backwards striking left elbow on pavement." The report also indicates that the investigating supervisor stated that investigation of the accident did not reveal any neglect on the part of the appellant. Accordingly, line-of-duty designation for the incident was approved. It is beyond dispute that appellant was disabled. Indeed, the medical board found him to be disabled as a result of a service-connected incident, and it recommended him to be retired due to accident disability under section B18-43.0 of the Administrative Code of the City of New York. Respondent board of trustees, however, rejected the recommendation of the medical board and denied the accident disability retirement. Significantly, respondent did not deny that the appellant was disabled as a natural and proximate result of this injury received in city service, nor did it deny a causal connection between appellant's line-of-duty injury and the disability for which he was retired. Rather, respondent board of trustees concluded that appellant's line-of-duty injury was not related to crime control. It was on this basis that respondent denied the accident disability retirement. Its only explanation for this conclusion was that what happened was an "incident * * * unrelated to crime control"

and not a "stress situation." Nowhere in the record does the respondent board of trustees define a "stress situation" other than with the observation that appellant was not "responding to any type of police call or in any kind of altercation." If the respondent has concluded that an "accidental injury in city-service" under section B18-43.0 requires the presence of "an incident related to crime control", "a stress situation", "a response to a police call" or "an altercation," not only has respondent failed to define its terms, but even more significantly, it has arbitrarily made an interpretation which is devoid of statutory foundation. Section B18-43.0, the statute in question, requires, in part, that a member be "physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service". The statute does not support the restricted interpretation given to it by respondents. Special Term incorrectly approved the determination by the respondent board by substituting its own finding that the injury was not an accidental one. Judicial review of this determination should have been limited solely to the grounds invoked by the agency, i.e., the incident was unrelated to crime control (*Matter of Montauk Improvement v Proccacino,* 41 NY2d 913). This expressed reason by the board for its determination extended the meaning of the statutory language of section B18-43.0 to apply to situations not intended to be embraced within the statute (*Matter of Jones v Berman,* 37 NY2d 42). Although eligibility for accident disability retirement requires not merely that the disability be job related, but that it result from a job-related accident (see *Manzolillo v New York City Employees' Retirement System,* 87 AD2d 791; *Matter of Rinaldi v Board of Trustees of N. Y. City Employees' Retirement System,* 88 AD2d 870; cf. *Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman,* 52 NY2d 463), no case that I am aware of defines "job-related accident" in the highly constricted, almost punitive way, the board has in the instant case. Moreover, even if the respondent board of trustees *had* denied appellant's application for an accident disability retirement pension on the grounds that "accident disability" as used in section B18-43.0 means "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (*Johnson Corp. v Indemnity Ins. Co. of North Amer.,* 6 AD2d 97, 100, affd 7 NY2d 222), the facts in the instant action establish that the appellant sustained injuries to his elbow which ultimately resulted in a permanent disability as a result of an accident which satisfies even the restricted definition used by the Court of Appeals (see *Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N. Y., Art. II,* 57 NY2d 1010). That appellant sustained an "accidental injury" within the meaning of section B18-43.0 is evidenced by the fact that he sustained a "sudden traumatic injury during a particular incident" (*Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman, supra*). There is nothing in that section which requires anything more than an "accidental injury" under the circumstances as are herein presented. The police officer in the instant case was walking toward the police car. He slipped on a wet curb and as a result sustained the concededly permanent injury herein involved. It is difficult to accept the idea that the officer purposefully slipped or could anticipate what occurred and hence is not entitled to disability retirement within the *Lichtenstein* test. *Lichtenstein* cites *Matter of Covel v New York State Employees' Retirement System* (84 AD2d 902), with approval. The facts in *Covel* are only superficially similar to the instant matter. There the school custodian was injured as he slipped on a floor he was dusting. The Third Department held that the incident did not involve an "accident." However, *Covel* can be distinguished on the grounds that there the custodian knew the risks involved in dusting the floors and that the injury was sustained as a

result of the risk inherent in the task being performed. The custodian in *Covel* slipped on oil he had intentionally applied to the floor earlier and which he knew to be slippery. In the case before us, the police officer was simply getting into a police patrol car when he unexpectedly slipped in water which had accumulated from rain. Certainly, this should be seen as a "sudden, fortuitous mischance, out of the ordinary and injurious in impact." In reality, the interpretation of the language of the Administrative Code by the board of trustees appears to be based more upon its interest in the fiscal integrity of the pension system rather than a "commonsense" interpretation of the word "accidental." The interpretation of "accidental" by the board of trustees would justify what Socrates is reputed to have said: "words are more plastic than wax." "Accidental," whether we define it in colloquial terms or even apply a more formal dictionary definition, has been distorted to achieve a result which I do not believe the statutory language warrants. The memorandum for the list states the rule relating to accidental injury as being "[i]njuries sustained during the performance of an employee's regular duties resulting from risks inherent in the task being performed are not accidents within the ambit of the Administrative Code". Applying the rule as thus enunciated would result in the anomalous and unfair consequence that a policeman, shot while pursuing an alleged perpetrator of a crime, would as a matter of law be excluded from an accidental disability retirement because his injuries were "sustained during the performance of an employee's regular duties resulting from risks inherent in the task being performed".

Kassal, J. (dissenting). The issue on this appeal is whether, under the recently announced rationale of the Court of Appeals in *Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N. Y., Art. II* (57 NY2d 1010), petitioner became disabled as a result of a job-related accident so as to qualify for accident disability retirement benefits. The underlying facts are not in dispute. Petitioner, a police officer, was assigned to the 114th Precinct. On April 15, 1979, he was on duty at Boulevard Hospital and was about to enter the rear door of a police patrol car upon the arrival of his relief officer. It had been raining heavily and he slipped on a wet portion of the curb, and fell to the pavement, injuring his left elbow. A line-of-duty designation for the accident was approved by the police department. He underwent surgery and was placed on sick leave four days after the accident, on April 19, 1979. On August 25, 1980, a police orthopedic surgeon advised that therapy would not improve the condition and petitioner thereafter filed for accident disability benefits. On October 13, 1980, the medical board, after determining that he had a permanent loss of flexion in his left elbow which rendered him unfit for police duties, approved petitioner's application. The board of trustees, however, by a six-to-six vote, retired petitioner on ordinary disability (*Matter of City of New York v Schoeck*, 294 NY 559). In denying the application and in dismissing the petition, Special Term found the admitted facts insufficient to warrant accident disability benefits, concluding that "[a]n injury sustained by a governmental employee while performing regular and usual duties without the intervention of an external, fortuitous event, proximately causing or contributing to the injury, is not an accident within the meaning of the statute". The determination, rendered prior to the disposition by the Court of Appeals in *Lichtenstein,* essentially applied the same standard. On the conceded facts here, however, I find petitioner to be entitled to accident disability benefits. The standard adopted by the Court of Appeals in *Lichtenstein* (p 1012) in defining the term " 'accident' " is the "commonsense" definition used in the insurance field "of a 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact' (*Johnson Corp. v Indemnity Ins. Co. of North Amer.,* 6 AD2d 97, 100, affd 7 NY2d 222)." Applying this

definition, the *Lichtenstein* court held (p 1012) that "an injury which occurs without an unexpected event as the result of activity undertaken in the performance of ordinary employment duties, considered in view of the particular employment in question, is not an accidental injury within the meaning of section B18-43.0". On this basis, accident disability retirement was denied, where the petitioner, also a patrolman, injured his back while leaning over the hood of an automobile to place a summons on the vehicle. In subsequent cases, we have followed the *Lichtenstein* rationale to conclude on the same basis that accident disability benefits were unwarranted. Thus, in *Matter of Menna v New York City Employees' Retirement System* (91 AD2d 537), we reversed a determination awarding accident disability benefits where the officer sustained a disabling back condition when he placed a spare tire into the trunk of his patrol car. In *Matter of Schussler v Codd* (91 AD2d 890) we denied accident disability to an officer who suffered a hearing impairment as a result of continuous exposure to excessive noise in participating in firing range activities (see, also, *Matter of Cardone v Codd,* 91 AD2d 909). Likewise, in *Matter of Shannon v Board of Trustees of N. Y. City Employees' Retirement System* (92 AD2d 528), we reversed a judgment awarding accident disability to an employee of the New York City Department of Sanitation, who had sustained disabling injuries as a consequence of his having lifted a heavy garbage can in the performance of his ordinary employment duties. In *Manzolillo v New York City Employees' Retirement System* (87 AD2d 791), decided prior to the disposition in *Lichtenstein,* we confirmed the determination which had denied an application for accident disability benefits to petitioner who, while performing usual patrol duties on a motor scooter, developed a disabling elbow condition diagnosed as " 'bilateral and medial epicondylitis' ". In *Matter of Rinaldi v Board of Trustees of N. Y. City Employees' Retirement System* (88 AD2d 870), we denied disability benefits where petitioner, an exterminator, became incapacitated as a result of exposure on the job to harmful dusts and chemicals, over an extended period. The foregoing, however, are readily distinguishable from the situation involved in this case. In each of the cited cases, the petitioning employee sought accident disability benefits as the result of a disabling condition sustained in the course of and as a result of his employment. In each, the injury occurred while the employee was performing the job he was hired to do and, in none was there a sudden, unexpected or fortuitous, external event. In our case, however, the slip and fall, caused by a wet pavement condition, was sudden, certainly fortuitous and unexpected, thus satisfying the *Lichtenstein* rationale. The injury was occasioned by an external and unexpected event, within the "commonsense" of the term "accident," as adopted by the Court of Appeals in *Lichtenstein.* To conclude otherwise would establish a line of demarcation which would have no rational basis. For example, assume that the fall resulted from a slip on a foreign substance, or from an oil slick condition caused by an accidental discharge from a vehicle, would the majority deny accident disability benefits to an employee who, while on police patrol duty, slipped as a result of that condition? Would not the situation be substantially similar had the fall resulted from a defective condition of the stairway of the station house and should not the legal result be the same? Under such circumstances, the injury would be accidental within the meaning of section B18-43.0 of the Administrative Code. The fact that the condition which precipitated the fall resulted from the slippery wet condition of the pavement following a rainstorm should not have any dispositive effect. The determination of whether accident disability benefits may be awarded is dependent upon the manner by which the injury occurred, not necessarily the cause of the condition which led to the injury. I do not subscribe to the concept,

as implied by the majority, that, to constitute an accident, the officer must have been in the actual pursuit of a criminal. Such an unreasonably harsh and restrictive construction of the Administrative Code is unwarranted and unrealistic as it would unfairly exclude a wide range of unexpected or fortuitous events which occur while a police officer performs routine duties. As an illustration, suppose the petitioner in the same patrol car returning to the precinct after his tour of duty had been injured because the car took a sudden lurch or there was a defective door lock, causing him to fall out of the vehicle? The answer — accident and coverage under the Administrative Code — is self-evident. Nor do I find that the determination by the Third Department in *Matter of Covel v New York State Employees' Retirement System* (84 AD2d 902), requires a different result. There, petitioner, a school custodian, sustained a disabling back condition as the result of having slipped while mopping a wet floor. Petitioner had previously applied oil to the floor, which he knew to be slippery. On this basis, accident disability benefits were denied since the injury resulted from a risk inherent in the performance of petitioner's routine duties and not as the result of an accident. The distinguishing feature in *Covel* which renders the determination inapposite to the facts here is that in *Covel,* petitioner created the slippery condition and, thereafter, slipped while mopping the floor, the very task he had been retained to do. Thus, in that case, the employee who had created the hazardous condition was injured while in the discharge of his duty to remove that very condition and it could not be deemed unexpected or fortuitous. In our case, clearly the injury was the result of an unexpected, external force, albeit while petitioner was performing his routine functions as a police officer. There is nothing in the *Lichtenstein* definition which eliminates accidents in the mundane pursuit of ordinary and commonplace duties, like patrol. The performance of that duty, however, does not negate the fact that the fall resulted and the injury occurred as the result of a sudden, fortuitous and unexpected happenstance, sufficient to sustain the application for accident disability benefits. Accordingly, I dissent and would reverse and vacate the judgment, grant the petition and remand the matter to respondents for further action consistent with the views expressed herein.