OPINION OF THE COURT
David B. Saxe, J.
A police officer suffering from a major depressive psychiatric disorder was retired on ordinary instead of accident disability. He challenges that determination in this CPLR article 78 proceeding.
Petitioner was appointed to the police department on June 26, 1974. From July 1, 1975 until October 26, 1978 he was laid off from his job as a patrolman due to the New York City financial crisis. He then resumed his service. However, in June 1982, while on patrol, petitioner allegedly encountered two men arguing and fighting and he attempted to end the dispute. Allegations were thereafter made by these assailants that the petitioner stole money or tried to extort money from them. An investigation was conducted and petitioner was served with disciplinary charges and suspended for one week. He was restored to duty but placed on a modified assignment pending a trial of the charges. In November 1984, petitioner was cleared of all charges.
Soon after these charges were made, petitioner began to exhibit signs of emotional difficulty. As a result, he was chronically absent from his job, which was noted by the Health Services Division. In a report dated August 19, 1985, the director of psychological services, Dr. Archibald, recommended that petitioner be retired. Specifically, the report stated that petitioner had begun to exhibit psychological disorders even before the 1982 incident, but that his condition considerably worsened with the onset of the incident and subsequent investigation. It was also noted that the petitioner was given various medications in October and November of 1983 which did not help. And, the report continued, even after the acquittal, the petitioner was depressed, withdrawn, unable to sleep, eat, or engage in normal activities. He was finally diagnosed as suffering from a major depression with psychotic features.
On August 26, 1985 Police Commissioner Ward ordered the Medical Board to examine petitioner. The Medical Board *911 found petitioner "paranoid, suspicious and very hesitant to respond to questions”. It reviewed the numerous medical reports submitted by Drs. Pinky, Archibald and Cole and concluded that the petitioner should be retired on ordinary disability because such disability was not the natural and proximate result of an accidental injury received in the performance of police duty.
At a meeting on December 11, 1985, the Board of Trustees, after considering the application voted 6 to 6 to retire petitioner on ordinary disability pursuant to Matter of City of New York v Schoeck (294 NY 559 [1945]).
Petitioner’s application in this article 78 proceeding is threefold.
First, he urges the court to remand the matter back to the Police Pension Board and to grant him accident disability because he says that his condition was the result of an "accident”. Second, he argues that the Board of Trustees was remiss in failing to make an independent assessment of his disability. And, third, that he is entitled to a greater retirement allowance than one third under an expired buy-back provision. (Civil Service Law § 80 [former 7], now renum [8].)
These contentions are unpersuasive.
Petitioner requests this court to accept a definition of accidental injury which would include the events which purportedly caused him to become emotionally disturbed. However, a commonsense definition of the term accidental injury does not support this contention. Specifically, the petitioner argues that the filing of larceny charges against him was psychologically, although not physically, traumatic — an unexpected, sudden event not caused by anything he did and, consequently, the injury was accidental.
The petitioner’s attempt to fit the events here within the term accidental injury is misplaced.
In Matter of Lichtenstein v Board of Trustees of Police Pension Fund (57 NY2d 1010, 1012 [1982]), the Court of Appeals adopted a commonsense definition of accident, as a " 'sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact’ ”. The words used in Lichtenstein, to describe the accident connote the occurrence of a physical injury and not an emotional event. The filing of charges against the petitioner did not have an immediate physical impact upon him. Simply stated, the term accident does not embrace the filing of unfounded larceny charges *912 against the petitioner. (Matter of Schussler v Codd, 91 AD2d 890 [1st Dept], affd 59 NY2d 698 [1983].)
Next, petitioner argues that the Board of Trustees, although required to, did not make an independent finding as to whether the claimed disability resulted from a line-of-duty accident. (Matter of Meschino v Lowery, 34 AD2d 255 [1st Dept 1970], citing Matter of Bennett v Board of Trustees of Police Pension Fund, 20 AD2d 522 [1st Dept 1963], affd 16 NY2d 562 [1965].) However, it is well settled that the Board of Trustees is entitled to rely on the opinion of the Medical Board where the issue of causation is one for medical judgment. (Matter of Tobin v Steisel, 64 NY2d 254, 259 [1985].)
Here, that is just what the Board of Trustees did; it relied on the judgment of the Medical Board. Petitioner has been unable to prove that his disability was causally related to a line-of-duty problem since he did not engage in any physical contact with the two assailants nor was the interaction sudden or fortuitous. It occurred within the normal realm of police duty. Therefore, it was not irrational nor capricious for the respondent to refuse petitioner accident disability retirement. The Medical Board’s determination that petitioner’s disability was not caused by a line-of-duty accident is supported by credible evidence and the Board of Trustees properly relied on the Medical Board’s expert opinion in denying accident disability retirement (Matter of Tobin v Steisel, supra).
Finally, petitioner’s claim regarding the buy-back period is without merit. The police department notified petitioner by letter dated August 23, 1983 that he was entitled to receive credit for the time period that he was laid off (L 1982, ch 927, as adding Civil Service Law § 80 [former 7], now renum [8]). The letter stated that in order to purchase credit for the period of July 1, 1975 through October 26, 1978, petitioner would have to pay $4,182.75 into the Pension Fund "by 12-19-83 or he would not be granted service credit”. It is undisputed that petitioner never bought back his service credit. A letter dated February 8, 1984 was placed in his file to that effect.
Petitioner now seeks to take advantage of a buy-back provision which expired two years ago. (Civil Service Law § 80 [former 7].) He claims that since that provision was later adopted again and renumbered, it served to reopen the buyback period. However, that argument is without merit. Had the Legislature intended the renumbering of section 80 to *913 include those laid off employees who had failed to timely buy back their pension time under section 80 (former 7), it would have stated that. As written, there is no language in the new section which can be construed as permitting petitioner to now buy back his time.
Accordingly, petitioner’s retirement on ordinary disability will not be disturbed by this court.